UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

CLERK'S MINUTES

CASE NO. 97cv549 LH/DJS   DATE May 5, 1998
TITLE Santillanes v. LeMaster
       Evidentiary Hearing

BEFORE: HONORABLE Don J. Svet   Magistrate   JUDGE

Michael D. Murphy                  Debra Ann Frieze
Deputy Clerk                       Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFF    ATTORNEYS PRESENT FOR DEFENDANT
Roger Finzel                       Patricia Gandert

PROCEEDINGS:

8:32  Ct in session
      Pet's Memo in support of non-procedural default filed
      in open court. Respondent given 10 days to respond.
8:38  Statement by Mr. Finzel in support of argument
      Pet had cause for procedural default.
8:45  Statement by Ms. Gandert - re NM rule regarding
      mailing & filing of documents before Supreme Court of
      New Mexico.
8:50  Response by Mr. Finzel.
8:53  Pet. calls Andrew Santillanes
9:00  Cross-examination of Santillanes.
9:05  Questions directed to Mr. Santillanes by the Judge.
      J - ask counsel to investigate forms in prison library. Judge
      would like to hear testimony of Robert Chappell
9:14  Respondent's Exhibit A admitted.
9:15  Ct in recess

30

```
                              NUMBER: CD-151200
                         DATE ISSUED: 01/17/92
                      EFFECTIVE DATE: 03/20/92
                        REVISED DATE: 08/30/96
```

SUBJECT: Correspondence Regulations

I. AUTHORITY:

   A. NMSA 1978, Section 33-1-6, as amended.

   B. Policy CD-010100.

II. REFERENCES:

   A. Modified Decree, <u>Duran v. King</u>, CD-77-0721-JB.

   B. ACA Standard 2-CO-5D-01, Manual of Standards for the Administration of Correctional Agencies, 1993.

   C. ACA Standards 3-4429 through 3-4438, Standards for Adult Correctional Institutions, 1990.

III. PURPOSE:

   To outline the regulations applicable to inmate correspondence.

IV. APPLICABILITY:

   All employees and inmates at any facility in the New Mexico Corrections Department.

V. DEFINITIONS:

   A. <u>Contraband</u>: Any item or article in the possession of an inmate, or found within the institution, that has not been officially issued, purchased in the commissary, or approved by an appropriate staff member.

   B. <u>Indigent Inmate</u>: An inmate whose trust fund account has been without funds for one month prior to the request for free postage.

   C. <u>Legal Mail</u>: Mail to attorneys, recognized agencies that provide legal assistance, or the courts.


EXHIBIT A

| | |
|---|---|
| DATE ISSUED: 01/17/92 | NUMBER: CD-151200 |
| EFFECTIVE DATE: 03/20/92 | PAGE: Two |
| REVISED DATE: 08/30/96 | |

D. **Privileged Correspondence**: Mail between inmates and attorneys, recognized agencies that provide legal assistance, the courts, elected and appointed governmental officials, the news media, grand juries, law enforcement agents or agencies, the Secretary of Corrections, Corrections Commissioners, and the Parole Board.

VI. POLICY:

The Corrections Department will encourage correspondence on a wholesome and constructive level between inmates and members of their families, as well as other friends or associates, with no restrictions except those necessary to ensure the safety and security of the facilities and other persons.

PREVIOUSLY CD-100900

8/28/96
Date

David W. Harris, Acting Secretary
New Mexico Corrections Department

```
                                      NUMBER: CD-151201
                                 DATE ISSUED: 01/17/92
                              EFFECTIVE DATE: 03/20/92
                                REVISED DATE: 08/30/96
```

SUBJECT: Correspondence Regulations

I. AUTHORITY:

   Policy CD-151200.

II. PROCEDURES:

   A. <u>Limits of Correspondence</u>: Inmates may correspond with any person and there is no limit upon the number of correspondents an inmate may have. However, correspondence may be rejected by prison officials pursuant to the other rules as stated in this procedure.

   B. <u>Postage</u>:

      1. All inmates in minimum restrict, medium and close custody facilities will receive postage for five first class letters per week. The cost of any other postage will be paid by the inmate.

      2. In minimum facilities indigent inmates will receive postage for five first class letters per week. All other inmates will pay for their own postage.

      3. A reasonable amount of postage for the following categories of mail will be supplied by the facilities for all inmates:

         Attorneys, recognized agencies that provide legal assistance, the courts, disciplinary appeals addressed to the disciplinary appeals officer, classification appeals addressed to the Classification Bureau Chief, Parole Board members, the Secretary of Corrections, Department staff located at Central Office, federal and state legislators, and the Governor of New Mexico.

   C. <u>Mailing of Letters</u>:

      1. Outgoing letters will be deposited in the designated boxes in each facility.

DATE ISSUED: 01/17/92

EFFECTIVE DATE: 03/20/92

REVISED DATE: 08/30/96

NUMBER: CD-151201

PAGE: Two

    2. Letters, except for those to privileged communicants, will be deposited unsealed. Letters must be written in English or Spanish except when another language of correspondence has been approved, in advance, by the Deputy Warden/Programs.

    3. Inmates will not modify institutional stationery in any way and the sender's name, number and living quarters assignment must appear on all outgoing mail.

D. Inspection of Mail:

    1. All outgoing mail from inmates, except for privileged correspondence, will be inspected for contraband.

    2. Outgoing mail will be read if there is reasonable suspicion to believe that the mail contains escape plans, other plans to commit a crime or to violate institutional rules or regulations, or constitutes a crime in and of itself.

    3. All incoming mail will be inspected for contraband.

E. Rejection of Incoming and Outgoing Mail:

    1. All inmates will be held responsible for the contents of their outgoing letters and deliberate violations may result in a misconduct report. Violations of Postal Laws may result in referral for prosecution to federal authorities.

    2. Rejected incoming and outgoing mail may be withheld, photocopied and filed for future reference.

    3. When any mail is rejected, the inmate and the correspondent will be notified, in writing, as to the reason for rejection and a copy of the notification will be placed in the inmate's central file.

    4. Rejected mail notifications must receive final signature approval of the Deputy Warden/Programs or designee. Any inmate whose mail is rejected may contest the rejection through the inmate grievance procedure.

| | |
|---|---|
| DATE ISSUED: 01/17/92 | NUMBER: CD-151201 |
| EFFECTIVE DATE: 03/20/92 | PAGE: Three |
| REVISED DATE: 08/30/96 | |

5. Outgoing mail will be rejected when the mail contains contraband, escape plans, codes, other plans to commit a crime or to violate facility rules and regulations, is intentionally deceptive, harassing or would constitute a crime in and of itself.

6. Incoming mail will be rejected for the following reasons:

   a. There is a clear and present danger that the mail will endanger the internal security of the institution, contains escape plans or other plans involving the prisoner in the commission of a crime or the violation of institutional rules and regulations, or would constitute a crime in and of itself.

   b. The mail contains codes or other attempts to circumvent correspondence regulations.

   c. The material is obscene in that it appeals primarily to the prurient interests or is patently offensive. A three member publication review panel will be established by the Warden with the authority to approve or reject materials that are alleged to be obscene. The panel will have the authority and responsibility to review allegedly obscene publications and correspondence to determine whether to reject the documents pursuant to this section.

   d. Junk mail, pamphlets, leaflets, brochures, etc., will be judged by the same standards as other correspondence. However, any incoming mail not addressed to a prisoner (occupant-type addressees) may be discarded at the discretion of prison officials.

F. Incoming Mail Enclosures:

   1. Money in the form of a cashier's check or money order may be sent to any inmate. Neither cash nor personal checks may be sent to inmates. Facilities shall not accept cash or personal checks on behalf of inmates and shall return them to the sender if they are enclosed with mail.

DATE ISSUED:   01/17/92            NUMBER: CD-151201

EFFECTIVE DATE: 03/20/92            PAGE:  Four

REVISED DATE:  08/30/96

2. Photographs will be rejected only pursuant to the same standards and procedures as publications. Photos must be sent without frames so they can be properly inspected without damage. An inmate may not have a picture of him/herself alone for security reasons.

3. Stamps, personal stationery, and self-addressed stamped envelopes are not permitted.

G. Certified and Registered Mail:

1. Incoming certified and registered mail for inmates will be processed as all other mail, but delivered to the addresses only upon securing a signed receipt for same.

2. Outgoing certified and registered mail is permitted if the inmate sender has the funds to pay for such service.

H. Privileged Correspondence:

1. Outgoing letters to attorneys, recognized agencies that provide legal assistance, the courts, elected and appointed governmental officials, the news media, grand juries, law enforcement agents or agencies, the Secretary of Corrections, Corrections Commissioners, and the Parole Board are considered privileged correspondence and will not be opened for inspection.

2. Letters in this category should be sealed by the inmate and dropped in the special box provided for such letters.

3. Incoming letters from privileged communicants may be opened, but not read, in the presence of the inmate in an appropriate, secure area of the facility by the Warden or designee to determine if the letters are counterfeit or contain contraband. A written notice shall be prepared and the correspondent shall be notified by the Warden or

<u>DATE ISSUED</u>:   01/17/92                       <u>NUMBER</u>:  CD-151201

<u>EFFECTIVE DATE</u>:  03/20/92                       PAGE:  Five

<u>REVISED DATE</u>:   08/30/96

designee that the mail was opened and the reason for the opening. The notification to the correspondent shall be signed by the Warden or the Warden's designee.

I. <u>Correspondence with the Clergy</u>: Clergy are not considered privileged correspondents.

J. <u>Books and Magazines</u>: Books and magazines will be accepted and delivered to inmates if they are received directly from the publisher or vendor, subject to other restrictions herein. Exceptions to this rule to allow receipt of books and magazines from other persons may be made by the Warden or designee for reasons of indigence or other good cause. Such exceptions will not be based upon the content of the publication, subject to the other restrictions herein.

K. <u>Incoming Packages for Inmates</u>: Inmates will be allowed to receive packages if they are sent directly from vendors and if the contents are allowed to be retained by inmates and are not available from the canteen, unless said items cannot reasonably be examined for contraband. Approval for receipt of said packages must be given in advance by the Deputy Warden/Programs or designee pursuant to the provisions of this section. All packages shall be subject to being searched for contraband.

L. <u>Distribution of Letters and Packages</u>: Incoming and outgoing letters are held for no more than 24 hours excluding weekends and holidays. Packages are held for no more than 48 hours excluding weekends and holidays.

M. <u>Forwarding Mail</u>: First-class letters and packages will be forwarded after an inmate's transfer or release. If a forwarding address is not available, such letters and packages should be returned to sender.

PREVIOUSLY CD-100901

_____        _____
Date                          David W. Harris, Acting Secretary
                              New Mexico Corrections Department

# NEW MEXICO
# RULES ANNOTATED

**1998 EDITION**

**Volume 2**

Rule Sets 10 through 12
Children's Court Rules and Forms
through Rules of Appellate Procedure,
Rule Sets 15 through 27
Rules Governing Admission to the Bar
through Rules Governing Review
of Judicial Standards Commission Proceedings
Local District Court Rules

*Annotations from Pacific Reporter through
Volume 941, second series*

*Prepared by the Editorial Staff of the Publishers*

MICHIE
*Law Publishers*
CHARLOTTESVILLE, VIRGINIA

# Supreme Court General Rules

Rule
23-101. Terms, sessions and hearings.
23-102. Clerk of the court.
23-103. Seal and process.
23-104. Conduct of court proceedings.
23-105. Withdrawn.

Rule
23-106. Supreme court committees.
23-107. Broadcasting, televising, photographing and recording of court proceedings; guidelines.
23-108. Court library use.
23-109. Chief Judges.

## 23-101. Terms, sessions and hearings.

A. **Term of court.** The supreme court shall hold one term each year, commencing on the second Wednesday in January, and shall be at all times in session at the seat of government; provided that the court may, from time to time, take such recess as in its judgment may be proper. (N.M. Const., art. 6, § 7.) If any cause shall not be decided during the term at or during which it was argued or submitted, it shall stand and be deemed continued from term to term until disposed of.

B. **Motions.** Except as otherwise specifically ordered, a session will be held on the Wednesday after the first Monday of each month for hearing motions. All motions as to which the time for filing briefs has expired will be heard on such motion days or be deemed submitted on briefs.

C. **Criminal cases and cases of general public interest.** Criminal cases and cases involving matters of general public interest or policy may be advanced for oral argument or decision by leave of the court and upon the motion of either party.

D. **Participation of justices.** Whenever the justices before whom a law question has been heard shall so desire, others of the justices may be called in to take part in the decision, upon a perusal of the record and briefs, without a formal reargument, unless one of the parties makes objection at the argument.
[As amended, effective January 1, 1987.]

**Cross references.** — For continuation of case from term to term, see 39-3-6 NMSA 1978 and Rule 12-402 NMRA. For oral argument, see Rule 12-214 NMRA.

**Am. Jur. 2d, A.L.R. and C.J.S. references.** — 20 Am. Jur. 2d Courts §§ 4, 21 et seq.
21 C.J.S. Courts §§ 111 to 123.

## 23-102. Clerk of the court.

A. **Residence.** The clerk of this court shall reside and keep his office at the seat of state government. He shall not practice law in any of the courts of the state.

B. **Original papers and records.** The clerk shall not permit original papers or records to be taken from his office, or from the courtroom, without a court order.

C. **Return of borrowed items.** Any transcript, brief or other document filed in the supreme court and supplied to counsel for use must be returned to the files on or before the date of submission of the cause. The clerk shall so require in all cases. A failure of counsel to comply with this rule shall constitute contempt.

D. **Oral argument.** The clerk will make up the calendars for oral arguments of cases giving attorneys at least five (5) days' notice of the setting of cases in which they appear as record counsel.

E. **Decision of court.** Unless otherwise directed by counsel, the clerk will notify one attorney of record on each side of a case of the result of the decision of the court therein.

F. **Copies of opinion.** Immediately after an opinion is rendered in a case, the clerk will transmit one (1) copy thereof to one counsel of record on each side of the case, without charge.

Case 1:97-cv-00549-LH-LFG   Document 30   Filed 05/05/98   Page 11 of 17

G. **Docket entry.** The clerk will enter cases on the docket in the order in which the transcripts on appeal and the order granting writs in cases of error are filed in his office. The date of the allowance of the appeal or the issuance of the writ of error, together with the name of the judge who tried the case, will also be entered on the docket by the clerk.

H. **Documents not complying with rules.** It shall be the duty of the clerk to enforce the several requirements of these rules by refusing to file documents not complying therewith.

**Cross references.** — For duties of clerks, see Rule 12-310 NMRA.

**Am. Jur. 2d, A.L.R. and C.J.S. references.** — 15A Am. Jur. 2d Clerks of Court § 1 et seq.

21 C.J.S. Court § 236 et seq.

## 23-103. Seal and process.

A. **Seal.** The seal shall contain the words "Supreme Court" on the upper part of the outer edge, and the words "State of New Mexico" on the lower part of the outer edge, running from left to right; and there shall be in the center the figure of a woman holding in her left hand the scales of justice, in her right a sword with the point resting level with her feet. (Specifications as follows):



B. **Process.** Process of this court shall be in the name of the chief justice of the Supreme Court of New Mexico and shall be in such form as shall be prescribed by the court, and shall be attested by the signature of the clerk and the seal of this court.

**Cross references.** — For process of supreme court and court of appeals, see Rule 12-311 NMRA.

**Am. Jur. 2d, A.L.R. and C.J.S. references.** — 20 Am. Jur. 2d Courts § 8.

## 23-104. Conduct of court proceedings.

A. **Judicial proceedings.** The purpose of judicial proceedings is to ascertain the truth. Such proceedings should be conducted with fitting dignity and decorum, in a manner conducive to undisturbed deliberation, indicative of their importance to the people and to the litigants, and in an atmosphere that bespeaks the responsibilities of those who are charged with the administration of justice. The broadcasting, televising, photographing and recording of court proceedings in the appellate, district and metropolitan courts of the State of New Mexico is authorized in accordance with the provisions of revised Canon 21-300 of the Code of Judicial Conduct.

B. **Nonjudicial proceedings.** Proceedings, other than judicial proceedings, designed and carried out primarily as ceremonies, and conducted with dignity by judges in open court, may properly be photographed in or broadcast from the courtroom with the permission and under the supervision of the court.

[As amended, effective September 1, 1989.]

determine whether IBEW should be awarded costs.



**Anthony Ray JENKINS, Plaintiff–Appellant,**

**v.**

**Jill BURTZLOFF and Linda Triggs, Defendant–Appellees.**

No. 94–3243.

United States Court of Appeals, Tenth Circuit.

Oct. 31, 1995.

Prisoner brought pro se petition for writ of habeas corpus. The United States District Court for the District of Kansas, Dale E. Saffels, J., dismissed petition as untimely, and prisoner appealed. The Court of Appeals, H. Dale Cook, Senior District Judge, sitting by designation, held that: (1) appeal period began to run on date of entry of judgment, not date that prisoner first received copy of judgment, and (2) prisoner's appeal was untimely filed more than 30 days after entry of judgment even if it was on date that he first received copy of it.

Appeal dismissed.

McKay, Circuit Judge, filed dissenting opinion.

**1. Federal Courts ⚖=654**

Date of entry of judgment or order, to begin appeal period, was date of entry on docket, not date upon which it was received by prisoner who was pro se litigant; word "entry" may not be construed differently for prisoners who are pro se litigants. F.R.A.P.Rule 4(a)(1), 28 U.S.C.A.

**2. Habeas Corpus ⚖=819**

Federal prisoner with pro se habeas corpus petition did not file timely notice of appeal, though he allegedly mailed notice on same date that he received order after his transfers between facilities delayed his receiving copy of order, where he filed notice of appeal more than 30 days after entry of order he was appealing, and he did not file motion for extension or otherwise request additional time within required seven-day period. 28 U.S.C.A. § 2107; F.R.A.P.Rule 4(a)(1, 5), 28 U.S.C.A.

**3. Federal Courts ⚖=669**

Filing of notice of appeal may not be treated as equivalent of filing of motion for extension of time where request for additional time is not manifest. F.R.A.P.Rule 4(a)(6), 28 U.S.C.A.

---

Carl E.K. Johnson, Denver, Colorado, for Plaintiff–Appellant.

Kenneth R. Smith, Department of Social Services, Topeka, Kansas, for Defendant–Appellee.

Before EBEL and McKAY, Circuit Judges, and COOK, District Judge *.

H. DALE COOK, Senior District Judge.

## I. INTRODUCTION

The plaintiff, Anthony Ray Jenkins, brought an action ostensibly under 42 U.S.C. § 1983. The district court held that Jenkins' complaint was, in essence, a petition for a writ of habeas corpus and dismissed it for failure to exhaust state remedies by an order dated April 28, 1994 and filed the same date.[1] Jenkins alleges that because of transfers from facility to facility while he was in continuous custody he did not receive his copy of the order in the mail until after he was returned to the Seward C[o...] 12, 1994. He also alleges [...] notice of appeal on the sam[e...] of appeal was date stamp[ed...] clerk: July 20, 1994.

Jenkins' appeal was dism[...] ness but was reopened up[on...] rehearing and he was app[...] discuss, along with such o[ther...] might consider appropriate. [...] er the delay in Jenkins' rec[...] court order should be con[sidered...] mining the timeliness of t[he...]

After an examination of [...] peal and other relevant pa[...] in this case we conclude [...] accept as true the unverif[ied...] Jenkins' papers he failed t[o...] site time limits for appealin[g...] to extend the time for appe[al...] cannot address the merits [...] cause we lack jurisdiction [...]

## II. WHEN TIME FO[R...] BEGINS TO RUN [...] HOUSTON V. L[ACK]

In *Houston v. Lack*, 4[87...] S.Ct. 2379, 101 L.Ed.2d 24[...] preme Court held that the [...] a notice of appeal by a p[risoner...] *pro se* is the date the prison[er...] notice of appeal to prison off[icials...] The Court noted in its op[inion...] control that the prisoner h[...] once it has left his hands; [...] arises whether a similar re[...] quire the time limit for f[iling...] appeal to be calculated fr[om...] prisoner receives notice of [...] order from which he or sh[e...]

In *United States v. Gra[...]* (3d Cir.1989) the Third Cir[cuit...] logic of *Houston* applied [...] court held that delays in t[...] by a prisoner caused by [...] should not be counted in [...] the time period for appeal [...] as delays after the mailin[g...] appeal are not counted in d[...] er the time limit has been [...]

---

* Honorable H. Dale Cook, Senior United States District Judge for the Northern, Eastern and Western Districts of Oklahoma, sitting by designation.

1. In the header of this opinion we have styled this case as the plaintiff originally did and as he urges us to do on appeal. In doing so we do not intend to pass on the merits of his appeal. At this time we render no decision on the merits.

:IES

o are pro se litigants.
4(a)(1), 28 U.S.C.A.

rpus ⊂⊃819

risoner with pro se habeas cor-
did not file timely notice of
he allegedly mailed notice on
at he received order after his
veen facilities delayed his re-
f order, where he filed notice of
than 30 days after entry of
appealing, and he did not file
xtension or otherwise request
e within required seven-day pe-
.S.C.A. § 2107; F.R.A.P.Rule
U.S.C.A.

:ourts ⊂⊃669

of notice of appeal may not be
quivalent of filing of notice of
xtension of time where request
nal time is not manifest.
e 4(a)(6), 28 U.S.C.A.

---

. Johnson, Denver, Colorado, for
pellant.

R. Smith, Department of Social
peka, Kansas, for Defendant-Ap-

BEL and McKAY, Circuit
d COOK, District Judge *.

E COOK, Senior District Judge.

I. INTRODUCTION

intiff, Anthony Ray Jenkins,
action ostensibly under 42 U.S.C.
he district court held that Jenkins'
was, in essence, a petition for a
beas corpus and dismissed it for
xhaust state remedies by an order
il 28, 1994 and filed the same date.[1]
lleges that because of transfers
ity to facility while he was in con-
stody he did not receive his copy of
in the mail until after he was

header of this opinion we have styled
as the plaintiff originally did and as he
to do on appeal. In doing so we do not
pass on the merits of his appeal. At
we render no decision on the merits.

returned to the Seward County Jail on July 12, 1994. He also alleges that he mailed his notice of appeal on the same date; the notice of appeal was date stamped by the court clerk: July 20, 1994.

Jenkins' appeal was dismissed for untimeliness but was reopened upon his petition for rehearing and he was appointed counsel to discuss, along with such other issues as he might consider appropriate, the issue whether the delay in Jenkins' receipt of the district court order should be considered in determining the timeliness of the appeal.

After an examination of the record on appeal and other relevant papers filed with us in this case we conclude that even if we accept as true the unverified allegations in Jenkins' papers he failed to meet the requisite time limits for appealing and for moving to extend the time for appeal. In short, we cannot address the merits of his appeal because we lack jurisdiction over the case.

## II. WHEN TIME FOR APPEAL BEGINS TO RUN UNDER HOUSTON V. LACK

In *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) the Supreme Court held that the date of "filing" of a notice of appeal by a prisoner appearing *pro se* is the date the prisoner turns over the notice of appeal to prison officials for mailing. The Court noted in its opinion the lack of control that the prisoner has over his mail once it has left his hands; and the question arises whether a similar reasoning might require the time limit for filing a notice of appeal to be calculated from the date the prisoner receives notice of the entry of the order from which he or she appeals.

In *United States v. Grana*, 864 F.2d 312 (3d Cir.1989) the Third Circuit held that the logic of *Houston* applied in reverse. The court held that delays in the receipt of mail by a prisoner caused by prison officials should not be counted in determining when the time period for appeal begins to run, just as delays after the mailing of a notice of appeal are not counted in determining whether the time limit has been overstepped.

After due consideration of the Third Circuit's reasoning and the arguments made in this case we have determined that we are unable to apply the *Grana* interpretation of *Houston* to this case. Although many or even all of the policy arguments of *Houston* may apply here an attempt to apply the legal justification of the *Houston* holding to the delay in delivery to the prisoner in the case before us is like trying to put a square peg in a round hole.

Although *Grana* was a criminal case, the case it relied upon, *Houston*, was, like the case before us, a civil case. The rationale of *Houston* was not constitutional or equitable in nature; rather, it was based on an interpretation of the word "filed" in the rule and statute governing the timeliness of notices of appeal. The Court held that a notice of appeal could be deemed timely "filed" upon delivery to the prison authorities for mailing. In order to apply this kind of statutory interpretation in reverse we would have to look to the language determining when the time for appeal begins to run and whether that beginning point could be construed to be the time when the prisoner receives notice of the entry of the order to be appealed from.

[1] F.R.A.P. 4(a)(1) provides that a notice of appeal in a civil case generally may be filed "within 30 days of the *date of entry* of the judgment or order appealed from." (emphasis added) 28 U.S.C. § 2107 similarly provides that in such a case a notice of appeal may be filed "within thirty days after the entry of such judgment, order or decree." The date of entry is the beginning point for when the time period begins to run and the question is whether the word "entry" can be construed differently in the case of prisoners who are *pro se* litigants. For a number of reasons it cannot be so construed.

Rule 4(a)(7) defines entry, providing that a judgment or order is "entered" under Rule 4(a) when entered in compliance with Rules 58 and 79(a). Rule 79(a), in turn, provides that the clerk shall keep a book in which all "orders, verdicts, and judgments shall be entered." The Supreme Court has interpreted the Rules to provide that entry means entry on the docket. *Acosta v. Louisiana*, 478 U.S. 251, 106 S.Ct. 2876, 92 L.Ed.2d 192

**462**  69 FEDERAL REPORTER, 3d SERIES

(1986).[2] We realize that the Rules of Appellate Procedure do not purport to affect the jurisdiction of this court. FED.R.APP.P. 1(b). However, we see no reason why any different definition of "entry" should apply under 28 U.S.C. § 2107.

Even if there were no definition of the word "entry" in the Federal Rules of Appellate Procedure we would not find it a reasonable definition of "entry" that the date of entry of a notice of appeal could be the date upon which it is received by a prisoner because such a construction defies the plain language of 28 U.S.C. § 2107. The absurdity of such a definition could be seen most clearly where a single order or judgment applies to several parties who are incarcerated. The date of entry for a single order could be different for each of the incarcerated parties.

Where a paper is deemed filed on the date it is mailed there is one filing date for the document so there is no similar problem. Although when a paper is deemed served[3] on a particular party on the date it is mailed there may be more than one date of service for each party, service is a concept that relates to individuals and documents simultaneously while entry is a concept that relates solely to the document. When a court clerk is asked what the entry date is of an order or judgment it should not be necessary for the clerk to give a different answer depending on who asks the question. Accordingly, we hold that *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) does not affect the date on which the time for appeal begins to run.

### III. RULE OF APPELLATE PROCEDURE 4(a)(6)

[2] We next address the question whether Jenkins' appeal is timely under the provisions of 28 U.S.C. § 2107 and FED.R.APP.P. 4(a). Both provisions require that a notice of appeal be filed within thirty days of the entry of a judgment, order or decree and both contain exceptions to this time limit. 28 U.S.C. § 2107(c) provides (in part):

"[I]f the district court finds—

(1) that a party entitled to notice of the entry of a judgment or order did not receive such notice from the clerk or any party within 21 days of its entry, and

(2) that no party would be prejudiced,

the district court may, upon motion filed within 180 days after entry of the judgment or order or within 7 days after receipt of such notice, whichever is earlier, reopen the time for appeal for a period of 14 days from the date of entry of the order reopening the time for appeal."

The Federal Rules of Appellate Procedure contain a similar exception:

"The district court, if it finds (a) that a party entitled to notice of the entry of a judgment or order did not receive such notice from the clerk or any party within 21 days of its entry and (b) that no party would be prejudiced, may, upon motion filed within 180 days of entry of the judgment or order or within 7 days of receipt of such notice, whichever is earlier, reopen the time for appeal for a period of 14 days from the date of entry of the order reopening the time for appeal."

FED.R.APP.P. 4(a)(6).

[3] There is no dispute that Jenkins failed to file a motion for extension or any document resembling such within the required seven day period. Jenkins did file a notice of appeal that is stamped by the clerk eight days after the date on which he alleges he received notice of the entry of the order below. We will assume, solely for purposes of argument, that his allegations are true and that he mailed the notice of motion the same day he received notice. We will further assume that if the notice of appeal he filed had been instead a motion for extension of time that the motion would have been timely. Even assuming all of that, we would still be compelled by establish[ed] precedent to dismiss his filing of his notice of a[ppeal] ed as the equivalent of of motion for extensi[on] request for additional [time]. This is the rule we ha[ve applied to] litigants seeking relief [under Rule 4(a)(5),] which has a 30 day t[ime limit and is] worded similarly to the [provisions of] Rule 4(a)(6). *Senjuro* [v. Murray, 943 F.2d] 36 (10th Cir.1991); *May[nard v. United States] Parole Comm'n*, 647 F[.2d 169 (D.C.Cir.] 1981).[4] We now hold t[hat our previous] cases for construing not[ices of appeal as mo]tices of motion under [Rule 4(a)(5) also ap]plies under Rule 4(a)(6).

We have examined Je[nkins' notice of ap]peal and found nothing [in it sug]gesting a request for e[xtension of time or] even a recognition of th[e deadline.] Subsequent documents d[ealing with these is]sues were filed in this [court after the] deadline and there has [been no showing] that any were mailed wi[thin the required] period. Accordingly, we [hold that Jenkins] failed to comply with t[he provisions of] Rule 4(a)(6) by failing to [file a motion] for extension of time; an[d his appeal cannot] be deemed timely under [that rule.]

### IV. EQUITABLE [CONSIDERATIONS:] FALLEN V. U[NITED] STATE[S]

We also reject the n[otion that] equitable considerations [support the] arguments of *Houston* ca[ses.]

---

2. Further support for this interpretation is given by Fed.R.Civ.P. 77(d), which provides: "Lack of notice of the entry by the clerk does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed, except as permitted in Rule 4(a) of the Federal Rules of Appellate Procedure."

3. We need not address in this opinion whether *Houston v. Lack* applies to the service of papers on other parties but note merely that such an interpretation is far more reasonable than the extension of the rule to postpone the moment that the time limit begins to run.

4. It is true that we found t[hat a notice of] appeal within a required [time was suffi]cient in *United States v. [...]* (10th Cir.1979). Howeve[r, that case dealt with] Rule 4(a)(5) (and unlike o[ur case was not] controlled by *Lucas*) defi[ning only the] time period in which a mo[tion...] the length of the time pe[riod...] The interpretations of Rul[e 4(a)(5) are not] controlling on this Rule 4[(a)(6) case.]

5. *Houston v. Lack*, 487 U.S[. 266,] 2379, 2387–88, 101 L.Ed.2[d 245 (Scalia, J.,] dissenting, joined by Rehn[quist, C.J., and] Kennedy). An alternative [interpretation] based on a rule of constru[ction from the] rules of criminal procedur[e is one inter]pretation that would secur[e...]

*[left column partially cut off]*

to this time limit. 28
rovides (in part):

court finds—

arty entitled to notice of
judgment or order did not
otice from the clerk or any
21 days of its entry, and
party would be prejudiced,
rt may, upon motion filed
s after entry of the judg-
or within 7 days after re-
otice, whichever is earlier,
e for appeal for a period of
ne date of entry of the order
time for appeal."

iles of Appellate Procedure
r exception:

court, if it finds (a) that a
l to notice of the entry of a
order did not receive such
he clerk or any party within
s entry and (b) that no party
ejudiced, may, upon motion
80 days of entry of the judg-
er or within 7 days of receipt
e, whichever is earlier, reopen
appeal for a period of 14 days
e of entry of the order reopen-
e for appeal."

4(a)(6).

is no dispute that Jenkins
a motion for extension or any
embling such within the re-
day period. Jenkins did file a
al that is stamped by the clerk
er the date on which he alleges
otice of the entry of the order
ill assume, solely for purposes
that his allegations are true and
d the notice of motion the same
ed notice. We will further as-
the notice of appeal he filed had
a motion for extension of time
otion would have been timely.
ing all of that, we would still be

not address in this opinion whether
Lack applies to the service of papers
arties but note merely that such an
on is far more reasonable than the
of the rule to postpone the moment
me limit begins to run.

---

compelled by established Tenth Circuit precedent to dismiss his appeal because the filing of his notice of appeal cannot be treated as the equivalent of the filing of a notice of motion for extension of time where a request for additional time is not manifest. This is the rule we have applied to *pro se* litigants seeking relief under Rule 4(a)(5)—which has a 30 day time limit for appeal worded similarly to the 7 day time limit in Rule 4(a)(6). *Senjuro v. Murray*, 943 F.2d 36 (10th Cir.1991); *Mayfield v. United States Parole Comm'n*, 647 F.2d 1053 (10th Cir. 1981).[4] We now hold that the rule of these cases for construing notices of appeal as notices of motion under Rule 4(a)(5) also applies under Rule 4(a)(6).

We have examined Jenkins' notice of appeal and found nothing in it remotely suggesting a request for extension of time or even a recognition of the lateness problem. Subsequent documents dealing with these issues were filed in this court long past the deadline and there has been no allegation that any were mailed within the seven day period. Accordingly, we hold that Jenkins failed to comply with the requirements of Rule 4(a)(6) by failing to file a timely motion for extension of time; and his appeal cannot be deemed timely under that rule.

## IV. EQUITABLE RELIEF AND FALLEN V. UNITED STATES

We also reject the notion that general equitable considerations such as the policy arguments of *Houston* can allow a tolling of the time limit for appeal under some rationale separate from the interpretation of the words of the relevant rule and statutory provision.

As important as the policies of *Houston* may be, as we mentioned in the previous section, *Houston* is a case of interpretation of the language of the rules. It provides no authority for equitable tolling. Although several justices have characterized the Court's decision in *Fallen v. United States*, 378 U.S. 139, 84 S.Ct. 1689, 12 L.Ed.2d 760 (1964) as a case of equitable tolling[5] they also said that it had no applicability to a civil context governed by the jurisdictional limit of 28 U.S.C. § 2107.[6]

In deciding the case before us it is enough to note that *Fallen* was a narrow decision providing relief where a prisoner had done all he reasonably could have done to comply with the rules. It did not expressly or effectively provide additional time for appeal to all prisoners regardless of their ability to comply with the rules as written.

In our case, the prisoner, by his own admission, mailed the notice of appeal the same day he received notice of entry of the judgment in the court below. He had seven days under Fed.R.App.P. 4(a)(6) to file a motion for extension of time and clearly could have done so about as easily as he filed the notice of appeal. Under these circumstances we note that there was an adequate remedy at law and that the prisoner's failure to qualify for relief was due to his own default, not matters outside of his control. In short, *Fallen* would not save this appeal regardless

---

4. It is true that we found the filing of a notice of appeal within a required extension period sufficient in *United States v. Lucas*, 597 F.2d 243 (10th Cir.1979). However, Rule 4(a)(6), like Rule 4(a)(5) (and unlike old rule 4(a) which was controlled by *Lucas*) defines *the length of the time period in which a motion can be made* not the length of the time period of the extension. The interpretations of Rule 4(a)(5) are therefore controlling on this Rule 4(a)(6) issue.

5. *Houston v. Lack*, 487 U.S. 266, 281, 108 S.Ct. 2379, 2387-88, 101 L.Ed.2d 245 (1988) (Scalia J. dissenting, joined by Rehnquist, O'Connor and Kennedy). An alternative view is that *Fallen* was based on a rule of construction in the applicable rules of criminal procedure permitting an interpretation that would secure justice. In our case,

the rules expressly prohibit the court from enlarging the amount of time for filing a notice of appeal. Fed.R.App.P. 26(b). However, we need not and do not at this time decide whether the *Fallen* case, properly characterized, might apply to civil appeals because even if it does apply the prisoner is still required to do all he or she reasonably can to comply with the rules, which Jenkins did not do.

6. The time limit of 28 U.S.C. § 2107 was held jurisdictional in *Browder v. Director Dep't of Corrections*, 434 U.S. 257, 264, 98 S.Ct. 556, 560-61, 54 L.Ed.2d 521 (1978). In *Stone v. Immigration and Naturalization*, —— U.S. ——, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995) the Court held that such jurisdictional time limits are not subject to equitable tolling.

**464**   69 FEDERAL REPORTER, 3d SERIES

of whether or not the relief it provided is properly characterized as equitable in nature and regardless of whether the rationale of that case or some similar rationale could conceivably save this appeal under more compelling facts. The time limit has run and we are without jurisdiction under the facts of this case in any event.[7]

### V. RULE OF CIVIL PROCEDURE 60(b)(1)

Notwithstanding the language of FED. R.CIV.P. 77(d) (precluding extensions of time for appeal unless authorized by FED.R.APP.P. 4(a)) we held in *Wallace v. McManus*, 776 F.2d 915 (10th Cir.1985) that relief was available under FED.R.CIV.P. 60(b)(1) when Rule 4(a) did not provide relief. However, where relief was available under Rule 4(a)(5) and the party failed to timely file a motion under that rule we held that Rule 60(b)(1) did not apply. *Senjuro v. Murray*, 943 F.2d 36 (10th Cir.1991). We now similarly hold that where relief is available under the newer Rule 4(a)(6), Rule 60(b)(1) is not available. In the case before us we do not have a prisoner who is disqualified from relief under Rule 4(a)(6) *through no fault of his or her own* (Jenkins was not disqualified for receiving notice more than 180 days after entry or because prejudice to the other party precluded a rule 4(a)(6) extension [8]). Accordingly, Rule 60(b)(1) cannot save his appeal.

### VI. CONCLUSION

We hold that the time limit for appeal commences to run on the date of entry with the clerk of the order to be appealed from for all parties regardless of their incarcerated status. Where, as is the case here, a prisoner could reasonably have complied with Rule 4(a)(6) but failed to file a timely motion for extension of time and also failed to file a notice of appeal within the normal time limit the prisoner is in default and we are without jurisdiction to hear the appeal.

Appeal dismissed.

McKAY, Circuit Judge, dissenting:

After review of the relevant precedents, I respectfully must dissent. If I were counting noses in the Supreme Court, I might come to a different conclusion. However, the only sound way to predict future Supreme Court action is to apply standard interpretive principles to its past decisions. Following that practice, I am persuaded that the Third Circuit in *United States v. Grana*, 864 F.2d 312 (3d Cir.1989), correctly applied *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), to a similar fact situation.

In the case before us, the court puts great emphasis on the fact that the operative and controlling word is "entry" while in *Houston* the operative and controlling word was "filed." As the dissent in *Houston* so ably pointed out, the barriers to interpreting "filed" to mean anything other than receipt by the clerk were as formidable as the barrier to interpreting "entry" to mean anything other than the clerk's act of lodging the

---

7. We also reject the notion that procedural avenues subject to district court discretion (such as FED.R.APP.P. 4(a)(6)) are not adequate to deal with the right of appeal lost due to prison delay. *U.S. v. Grana*, 864 F.2d 312 n. 6 (3d Cir.1989). Although the procedural avenues do not address the problem of prison delay specifically they are at least adequate as they apply to the facts of this case.

    We need not address at this time the extent of the discretion of the district court in deciding whether to allow an extension under Rule 4(a)(6). It is enough for purposes of the decision we reach at this time to note that appellate review for abuse of discretion might also be used to give effect to the policies of *Houston v. Lack* where the statutory exceptions do apply and that such review would not do the kind of violence to principles of statutory interpretation as would an equitable rule of tolling—fashioned without regard to statutory language—that benefits all prisoners (including those who could have complied with the existing rules in the absence of any such relief).

8. Because the prisoner defaulted on the 7 day requirement which was within his power to comply with and otherwise qualified for relief under Rule 4(a)(6) (there was no allegation of prejudice to the opposition resulting from the delay) we need not address at this time the question whether relief might be available in some form to a prisoner who loses his right to appeal under Rule 4(a) in a civil case through no fault of his or her own.

8. We need not and do not state an opinion pro or con regarding whether any remedies or relief would be available to a prisoner with delayed mail who fails to qualify for a FED.R.APP.P. 4(a) extension through no fault of his or her own.

[left column — partially cut off]

...rder to be appealed from for
...dless of their incarcerated
... is the case here, a prison-
...bly have complied with Rule
... to file a timely motion for
...e and also failed to file a
...within the normal time limit
...n default and we are without
...ear the appeal.

...sed.

...uit Judge, dissenting:

...of the relevant precedents, I
...st dissent. If I were counting
...preme Court, I might come to
...nclusion. However, the only
...predict future Supreme Court
...ply standard interpretive prin-
...ast decisions. Following that
... persuaded that the Third Cir-
... *States v. Grana*, 864 F.2d 312
... correctly applied *Houston v.*
...S. 266, 108 S.Ct. 2379, 101
...1988), to a similar fact situation.

... before us, the court puts great
...the fact that the operative and
...ord is "entry" while in *Houston*
...e and controlling word was
...the dissent in *Houston* so ably
... the barriers to interpreting
...ean anything other than receipt
...were as formidable as the barri-
...reting "entry" to mean anything
...the clerk's act of lodging the

...ding those who could have complied
...sting rules in the absence of any such

...the prisoner defaulted on the 7 day
... which was within his power to com-
...d otherwise qualified for relief under
...(there was no allegation of prejudice
...osition resulting from the delay) we
...ddress at this time the question wheth-
...ight be available in some form to a
...ho loses his right to appeal under Rule
...ivil case through no fault of his or her

... not and do not state an opinion pro or
...ding whether any remedies or relief
... available to a prisoner with delayed
... fails to qualify for a FED.R.APP.P. 4(a)
... through no fault of his or her own.

Judgment in its docket. Effectively, the majority in *Houston* acknowledged that in every situation except *pro se* prisoner cases, "filed" still means receipt by the clerk no matter the equities. The net effect is that the court relied on the uniqueness of the fact that prisoners are under control of the state itself to give "filed" a meaning in their cases that it did not, and still does not, have in any other litigant's case. That is the precise parallel for precisely the same reason for us to hold that "entry," while retaining its "act of the clerk" meaning in all other cases, means "delivery of notice to the prisoner" in *pro se* prisoner cases.

It may be argued that the plain meaning of "entry" is somehow plainer or more emphatic than the plain meaning of "filed." I believe a reading of *Houston*, especially the dissent, and the majority's implicit conclusion that "filed" still *really* means "filed" in all but prisoner cases adequately answers any assertion that the plain meaning of the one word is more emphatic than the plain meaning of the other.

I would apply *Houston*, as set out in *Grana* and expanded on in this brief dissent, to the facts of this case. Thus I would partially remand to the trial court to determine the truth of the time allegations and retain jurisdiction until that task is completed. If the trial court verifies the allegations, I would proceed to the merits.



---

**Myles C. CULBERTSON,
Petitioner–Appellant,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE, Respondent–Appellee.**

No. 94–9570.

United States Court of Appeals,
Tenth Circuit.

Nov. 1, 1995.

Cattle broker petitioned for review of order of Secretary of Agriculture imposing civil sanctions against him for aiding in interstate movement of cattle in violation of Contagious Cattle Disease Act. The Court of Appeals, Paul J. Kelly, Jr., Circuit Judge, held that broker's actions in transporting parties and documents or witnessing loading of infected cattle onto trucks without having authority to arrange delivery was not sufficient for him to be liable for moving cattle in violation of the Act.

Reversed.

1. Statutes ⟐219(1)

Court of Appeals accords agency broad discretion in administering law and interpreting its enabling statute.

2. Administrative Law and Procedure ⟐413

Agency is entitled to even greater deference when it acts according to interpretation of regulations promulgated by agency itself.

3. Administrative Law and Procedure ⟐413

Court of Appeals need not accept agency's interpretation of its own regulations if that interpretation is unreasonable, plainly erroneous, or inconsistent with regulation's plain meaning.

4. Animals ⟐35

Cattle broker did not move cattle, as required for him to be subject to liability for aiding in interstate movement of cattle in violation of Contagious Cattle Disease Act, though he was present when cattle were shipped and he delivered health certificates from veterinarian to truckers, where he delivered certificates as favor for owner, and he merely advised owner on sale of his cattle, presented cattle to potential buyers and negotiated sale price; he did not have authority to arrange delivery of cattle and did not assist in loading cattle. 21 U.S.C.A. §§ 111, 120, 122; 9 C.F.R. § 78.1.

---

M. Karen Kilgore of White, Koch, Kelly & McCarthy, P.A., Santa Fe, New Mexico, for Petitioner–Appellant.