IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ANDREW SANTILLANES,

    Petitioner,

vs.                                      Civ. No. 97-549 LH/DJS

TIM LeMASTER, Warden,

    Respondent.

## MEMORANDUM IN SUPPORT OF PETITIONER'S
## NON-PROCEDURAL DEFAULT IN THIS HABEAS PETITION

**COMES NOW** counsel for the Petitioner Andrew Santillanes, Roger A. Finzel, Assistant Federal Public Defender, and files this Memorandum in support of his position that there was no procedural default in the state court because his Petition for Writ of Certiorari to the New Mexico Supreme Court was allegedly untimely. Notwithstanding any claim of untimeliness in the filing of that petition, petitioner further states that there is cause for any alleged untimeliness and that the petitioner meets the tests of cause and prejudice for him to over come any alleged default.

    1.    Petitioner will present evidence, through testimony of himself, that on March 19, 1997, he prepared, put into an envelope and put into the mailbox at the prison, his Petition for Writ of Certiorari to the New Mexico Supreme Court. It is now known that it was due to be filed on March 24, 1997. Inexplicably, it was not filed by the clerk of the New Mexico Supreme Court until April 1, 1997. At that time, the clerk, while date

stamping the Petition, refused to file it as being untimely. Petitioner will also present through Affidavit the testimony of the person who assisted him in the preparation of the Petition for Writ of Certiorari, who verifies that it was prepared and mailed on March 19, 1997. Furthermore, counsel is prepared to submit, subsequent to the hearing, an Affidavit from a corrections officer who witnessed the document, saw the date on the document, confirms that the date written on the document of March 19, 1997, was the date he saw them place the document in a sealed envelope in the mailbox to be mailed to the Supreme Court.[1]

2.  The questions under review are if a petitioner files in the United States mail a document which should easily arrive within the procedural rules time limit for filing by the state court of New Mexico, but for reasons not of his fault, the document does not arrive in a timely fashion, can the State of New Mexico declare that the petition is procedurally defaulted? Secondly, can the clerk of the New Mexico Supreme Court, on his or her own observations, without further action of the New Mexico Supreme Court, essentially make a legal finding that the pleading will not be filed because it is procedurally barred or defaulted because it is untimely filed?

3.  Another question is does the ministerial act of a clerk merely checking dates

---

[1] Counsel was unable to obtain the Affidavit from the guard prior to this hearing. However, the guard has been identified, messages have been left for him, and, if necessary, an investigator will locate him. If that fails, counsel will seek leave of the court to subpoena the guard to court to testify at a subsequent hearing, should that be necessary.

2

rise to the level of a legal determination of procedural default or is it merely an administrative or ministerial act, having no legal precedent? Does the Fifth Amendment to the United States Constitution, providing for due process and equal protection, prohibit the State of New Mexico from enforcing a procedural rule adverse to this client's rights or does the client's reasonable actions in mailing the document in sufficient time preclude the State of New Mexico from finding that there has been a procedural default because it was not received by them within the time necessary by the rules of the Supreme Court of New Mexico? If the petitioner's Petition is procedurally defaulted because it was not received by the required date, can that default be over come for cause and must the petitioner show prejudice as well? Does that exist in this case?

4. In support of these positions, counsel submits the following facts and legal arguments.

5. S.C.R.A. 12-501(B) provides that a certiorari petition "shall be filed with the Supreme Court clerk within 30 days of the district court's denial of the [habeas petition]." It also notes that the three additional days allowed for mailing under S.C.R.A. 12-308 does not apply to this 30 day time limit. The rule does not mention whether or not the time limit could be extended for any particular reason or how the time limit should be applied to *pro se* indigent prisoners. However, the State Supreme Court has indicated under rules similar in every relevant respect to the rules in effect when Santillanes attempted to file his petition, that a late filing of a certiorari petition will be excluded

3

under "unusual circumstances justifying such late filing." *Serna v. Board of County Commissioners of Bernalillo County*, 88 N.M. 282, 284 (1975); *Gulf Corporation v. Rhota-Cone Field Operating Co.*, 85 N.M. 636 (1973). See *N.M. Stat. Ann. § 21-2-1 (5)(1) (1953), N.M. Stat. Ann. § 21-2-1 (29(2))(1953 Compilation)*. Thus, the Supreme Court rules do not, as told to Santillanes by the clerk of the Supreme Court, preclude the Supreme Court's consideration of the circumstances surrounding the late filing of a petition. Nor do the rules empower the Supreme Court clerk to reject a petition if she thinks it is untimely. *See Torrez v. Smith Management Corp.*, 111 N.M. 547, 549 (Ct. App. 1991)(noting lack of authority cited for proposition that Court of Appeals clerks could refuse to file documents presented for filing.)

6.  Had the Supreme Court been given an opportunity whether to accept jurisdiction of Santillanes' petition, the court may very well have considered his petition timely filed, given Santillanes' circumstances and the fact that he mailed it on March 19th. Significantly, the clerk of the Supreme Court did not save the envelope, evidencing the date of mailing, probably because of a misreliance on the State Supreme Court rule that indicates it has to be received before it will be accepted to meet a filing deadline. Nonetheless, the Supreme Court has consistently followed a policy of construing its rules liberally so that cases on appeal can be determined on the merits whenever possible. *Lovelace Medical Center v. Mendez*, 111 N.M. 336 (1991); *Olguin v. State*, 90 N.M. 303 (1977); *see also State v. Maines*, 112 N.M. 161, 163 (1991); *Clayton v. Trotter*, 110 N.M.

369, 370 (Ct. App. 1990), noting the court's long standing policy of hearing appeals on the merits even if it means over looking strict compliance with appellate rules. New Mexico appellate courts have recognized the importance of upholding substance in the interest of justice over form in enforcing their procedural rules. *See Adams v. Tatsch*, 68 N.M. 446 (1961); *State v. Melton*, 120 N.M. 120, 122 (Ct. App. 1984). In addition, in New Mexico *pro se* petitions are regarded "with a tolerant eye." *Martin v. State*, 110 N.M. 357, 359 (Ct. App. 1990). Thus, if the Supreme Court had had a chance to review Santillanes' petition, the court would have been required to apply a liberal construction and a "tolerant eye" to the timeliness issue. Viewing his circumstances in that light, Santillanes was entitled to consideration of his petition as timely. Santillanes was a *pro se* prison inmate. The situation of prisoners without counsel seeking to file a petition for certiorari is unique. As the Supreme Court has recognized, such prisoners cannot take the steps other litigants can take to monitor the processing of their petitions and to insure that the court clerk receives and stamps their petitions on time. *Houston v. Lack*, 487 U.S. 266. Unlike other litigants, they are forced to trust to the vagaries of the mail, the prison, authorities, and the clerk's filing process. *Id. at 271*.

7.  *Pro se* prisoners cannot take any precautions other litigants can take to insure timely filing, such as calling the court to determine if the pleading has been received or personally delivered. "Worse, the *pro se* prisoner has no choice but to entrust the forwarding of his Notice of Appeal to prison authorities whom he cannot control or

5

supervise or who have every incentive to delay." *Id.* "Unskilled in law, unaided by counsel, and unable to leave prison, [the *pro se* prisoner's] control over the processing of his [pleading] necessarily ceases as soon as he hands it over to the only public officials to whom he has access -- the prison authorities -- and the only information he will likely have is the date he delivered the [pleading] to those prison authorities and the date ultimately stamped on his [pleading] *Id. at 271, 272.* For these reasons in *Houston*, the U.S. Supreme Court held that although for ordinary litigants the Notice of Appeal is not considered filed until the district court clerk actually sees the Notice, for *pro se* prisoners the moment of delivery of the Notice to prison authorities for mailing to the district court is the moment of filing. *Id. at 269-276.* For the same reasons and given the liberal construction requirements noted above, the New Mexico Supreme Court could very well have adopted the same policy for its *pro se* prisoner habeas certiorari petition, had its clerk given it the chance to do so. Had the court done so, Santillanes' certiorari petition would have been timely filed the day he placed the petition in the institutional mailbox on March 19, 1997.

       8.      Moreover, in terms of justifying the court's acceptance of jurisdiction over a petition which arrives at the clerk's office after the time limits, Santillanes presents a much more compelling situation than does the typical *pro se* petitioner. Not only was Santillanes at the mercy of the prison's postal services and clerk's handling of his completed petition, but he also was prevented by prison circumstances from completing

his petition and mailing it any sooner than he did. Counsel believes the record will show that there was a prison lock-down until March 5, 1997, which delayed the opportunity to get his petition filed. That is, he had no opportunity to get it done earlier because he was locked down. But for the lock-down to March 5, 1997, he could have gone to the library and located the legal assistant in the prison to aide him prior to March 19, 1997. When he was finally able to finish the certiorari petition, the petitioner dated it the day he wrote it of March 19, 1997, and placed it in the mailbox located outside of the library at the prison complex in the prison in Santa Fe, New Mexico. Despite making all reasonable efforts to send off the petition as soon as possible, Santillanes was precluded from doing so by circumstances beyond his control but within the control of prison authorities, the opposing party in this case.

9. Santillanes put the petition in the prison's mailbox, located outside the library, as soon as he could on March 19, fully five days before it was due. Apparently the prison did not deliver the petition to the postal service until sometime thereafter, or the postal service did not deliver it to the clerk of the court until sometime thereafter. All the records show and all that can be established is that the petitioner put it in the mailbox on March 19, 1997, and the Supreme Court clerk noted that it was received for filing by them on April 1, 1997. The filing deadline was March 24, 1997. It is likely then that had the State Supreme Court been provided an opportunity to consider Santillanes' *pro se* inmate status and the additional reasons for delay and the mailing of his petition, the court

could easily have accepted the petition for filing pursuant to the court's standing rules and practices. *See Adams*, 68 N.M. at 447-448 (Since party's counsel were diligent in their efforts to accomplish timely allowance of appeal and the reasons for the delay in filing of the appeal allowance were explained, one day late filing would not prevent appeal.) *See also Fallen v. U.S.*, 378 U.S. 139, 142-144 (1964)(*pro se* defendant allowed appeal because he did all he could reasonably be expected to do to file a Notice of Appeal on time when he mailed the notice while hospitalized two days before it was due but it arrived a day late, due to delays not attributable to defendant.) Since the court did not reject Santillanes' claim on procedural grounds and would not have rejected them on that basis if the clerk had given him the chance to do so, this federal court must consider Santillanes' claims on their merits. *See Harris*, 489 U.S. at 263-266.

10. <u>The rejection of petitioner's petition was not based on independent and adequate state grounds.</u> In any event, even if the Supreme Court clerk's rejection of Santillanes' claim on timeliness grounds constitutes an explicit ruling by the court on procedural grounds, such a ruling does not prevent review of Santillanes claims by this court. A procedurally based state court ruling precludes federal habeas review only where it is based on "independent and adequate" state grounds. *Alster Co. Court v. Allen*, 442 U.S. 140, 154 (1979). A state procedural bar is "adequate" only if it is clearly announced, firmly established and regularly followed. *James v. Kentucky*, 466 U.S. 341, 348-349 (1984); *Henry v. Mississippi*, 379 U.S. 443, 448 (note three 1965); *Gutierrez v.*

8

*Moriarty*, 922 F.2d 1464, 1469-1471 (10th Cir. 1991); *Osborne v. Shillinger*, 861 F.2d 612, 618-619 (10th Cir. 1988); *Wheat v. Thigpen*, 793 F.2d 621, 624-625 (5th Cir. 1986). There is no such procedural bar where the petitioner could not fairly have deemed to have been apprised of its existence. *Reynolds v. Ellingsworth*, 843 F.2d 712, 721 (3rd Cir. 1988); *Oliver v. Wayneright*, 795 F.2d 1524, 1519 (11 Cir. 1986). If the State Supreme Court did have a rule, as its clerk claimed, that a *pro se* litigant inmate's certiorari petition could not be filed if it arrived late at the clerk's office for any reason, that rule was not the kind of unmistakably established <u>strictly followed</u> rule that could justify preclusion of federal review.

11. As shown above, the clerk's notions about timeliness have no support in the Supreme Court rules. On the contrary, the only state law in the matter is that untimely certiorari petitions will be accepted under certain circumstances. *See Serna*, 88 N.M. at 284, *Gulf Oil Corporation*, 85 N.M. at 636. Nor is there even authority in the rules for the clerk to reject a filing on his or her own for any reason. Obviously, when Santillanes was working on his petition, the State Supreme Court had not clearly announced in unmistakable terms any rule that its court could refuse to file a habeas certiorari petition sent by a *pro se* inmate that arrived past the time limit, regardless of the reason for its tardiness. Consequently, the application of that supposed rule in Santillanes' case cannot preclude review of his claims by this court.

12. Moreover, a petitioner's claim is not resolved on an independent and

adequate state ground when the state's insistence upon compliance with a [procedural rule] does not serve a legitimate state interest. *Henry,* 379 U.S. at 448. Upon refusing to file every habeas arriving late at the clerk's office no matter how compelling the reasons for the late arrival and regardless of the custody status of the petitioner achieves no valid state purpose.

13. It is true that definite time limits for appeal and certiorari are invaluable for the purposes of finality. But that purpose can be served equally as well without ignoring the pleas of petitioners whose petitions have been delayed by circumstances beyond their control. It is simply unfair, callous and irrational to apply a time limit rule that leaves no room for consideration of very real factors that obstruct the meeting of that limit. Such a rule would be particularly insensitive in New Mexico, where, if such a rule existed, it would only apply to habeas certiorari petitioners who are almost exclusively *pro se* prisoners. This smacks of discrimination against the class of people who should be accorded more, not less, than customary tolerance with respect to meeting procedural requirements. *Houston,* 487 U.S. at 270-271. This violates the are process and equal protection clauses of the Fifth Amendment of the U.S. Constitution. Thus, the only real purpose served by the purported rule applied by the clerk in this case is to preclude certiorari review of habeas petitions filed by *pro se* prisoners whose certiorari petitions have been delayed by circumstances beyond their control, including actions by prison authorities, the prisoner's opposing party. This is obviously not a legitimate state

10

interest. *See Houston,* 487 U.S. at 275-276. Consequently, even if Santillanes' certiorari petition was rejected by virtue of that rule, his claims are not precluded from federal rule.

14.   <u>There is cause and prejudice for petitioner's purported default.</u>

Even assuming arguendo that Santillanes has procedurally defaulted his habeas claims, he is entitled to federal review of those claims because there is cause for the purported default and prejudice resulted from the constitutional violations he alleges. Under those circumstances, the procedural default in state court will be excused. *Coleman,* 111 S.Ct. At 2561-2566.

15.   The existence of cause "must ordinarily turn on whether the prisoner can show some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. *Murray v. Carrier,* 477 U.S. 478, 488 (1986). Showing that "some interference by officials ... made compliance impractical would constitute cause under this standard." *Id. quoting Brown v. Allen,* 344 U.S. 443, 486 (1953). That is precisely what Santillanes has demonstrated in this case. He has shown that the prison authorities prevented him from mailing his certiorari petition until five days before it was due, that either the prison authorities or the postal authorities delayed the mailing or delivery of the petition until it was overdue and that the New Mexico Supreme Court clerk decided that the petition could not be filed. Santillanes has also shown that the Supreme Court clerk, despite the lack of any apparent authority to do so, refused to file the petition or allow the court to decide if it could be filed.

16. It is apparent then that Santillanes' good faith attempt to comply with state procedure was frustrated through no fault of his own. Rather, the responsibility for Santillanes' purported procedural default lies with the prison authorities, the postal service and the Supreme Court clerk, particularly in light of Santillanes' inmate status, *see Davis v. U.S.*, 740 F.2d 239-245 (3rd Cir. 1984). The interference by those persons in institutions creates more than sufficient cause for Santillanes' alleged default. *See Amadeo v. Zant*, 486 U.S. 214, 222 (1988).

17. There is also actual prejudice resulting from the violations of federal law petitioner alleged in the state court. Actual prejudice is prejudice that works the petitioner's "actual and substantial disadvantage." *U.S. v. Frady*, 456 U.S. 152, 170 (1982). The prejudice issue must be assessed with the assumption of the constitutional claim in question is meritorious. *Sutton v. Brown*, 812 F.2d 593, 596 (10th Cir. 1987). ("The alleged error would be prejudicial, if valid and therefore [we] turn to the merits of the issue.") *Maupin v. Smith*, 785 F.2d 135, 139 (1986). If Santillanes were to successfully establish his constitutional claims before this court, he would reduce the time he would have to spend in prison before being eligible for parole significantly. Not only that, he may in fact be entitled to either a reversal of his conviction or for a new trial. Thus, petitioner has met the actual prejudice requirement.

18. The prejudice component of the cause and prejudice test can be met by proving the prejudice prong of an ineffective assistance of counsel claim. *Hollice v.*

*Davis*, 941 F.2d 1471 at 1480 (11th Cir. 1991). That such prejudice exists in this case will be shown upon a hearing or brief on the merits of Santillanes' ineffective assistance claim.

WHEREFORE, based on the foregoing and for additional reasons to be advanced at the evidentiary hearing on May 5, 1998, counsel respectfully requests that this Court determine, for whatever reason, that either a procedural default did not exist, or it has been cured through cause and prejudice as show by the petitioner herein.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
111 Lomas, NW, Suite 501
Albuquerque, NM  87102
(505) 766-3293

_____
ROGER A. FINZEL
Attorney for Defendant

I hereby certify that a true copy of the foregoing pleading was hand delivered to Asst. Attorney General Patricia Gandert this 5th day of May, 1998.

_____
Attorney for Defendant

13