IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO



FILED
UNITED STATES DISTRICT
DISTRICT OF NEW MEXICO

99 JUL 26 PM 3: 53

CLERK-ALBUQUERQUE

ANDREW SANTILLANES,

    Petitioner,

vs.                          Civ. No. 97-549 LH/LFG

TIM LeMASTER, Warden,

    Respondent.

## PETITIONER'S MEMORANDUM BRIEF IN SUPPORT OF HIS PETITION FILED ON APRIL 21, 1997

Roger A. Finzel
Assistant Federal Public Defender
111 Lomas, NW, Suite 501
Albuquerque, NM   87102

July 26, 1999

54

PETITIONER, ANDREW SANTILLANES, submits the following Memorandum Brief in support of his habeas petition filed on April 21, 1997, seeking vacation of his convictions for murder and attempted robbery.

## ISSUES PRESENTED

I.    WHETHER PETITIONER'S FEDERAL PETITION FOR A WRIT OF HABEAS CORPUS SHOULD BE DISMISSED FOR PROCEDURAL DEFAULT IN THAT HIS PETITION FOR WRIT OF CERTIORARI TO HIS STATE PETITION FOR WRIT OF HABEAS CORPUS WAS NOT RECEIVED BY THE NEW MEXICO SUPREME COURT WITHIN THE TIME REQUIRED BY THE RULES OF THE NEW MEXICO SUPREME COURT.

II.    WHETHER PETITIONER HAS ESTABLISHED THROUGH CAUSE AND PREJUDICE AND/OR ACTUAL INNOCENCE THAT HIS PETITION SHOULD NOT BE DISMISSED FOR THE ALLEGED PROCEDURAL DEFAULT.

III.    WHETHER HIS COUNSEL WAS INEFFECTIVE AT TRIAL IN LIMITING HIS DEFENSE TO CROSS EXAMINATION OF THE FORMER CO-DEFENDANT COOPERATING WITNESS, ALLEGED ACTUAL MURDERER INSTEAD OF EXPLORING A POLYGRAPH WITH DEFENDANT. FURTHERMORE, COUNSEL WAS INEFFECTIVE FOR THEN ADVISING THE CLIENT NOT TO TESTIFY ONCE HAVING EXCLUDED THE POSSIBILITY OF THE DEFENDANT BEING ABLE TO PRESENT A POLYGRAPH REGARDING HIS ACTUAL INNOCENCE.

IV.    WHETHER TRIAL COUNSEL'S INEFFECTIVE ASSISTANCE CONSTITUTES HARMLESS ERROR.

V.    WHETHER THE DEFENDANT'S WAIVER OF HIS RIGHT NOT TO TESTIFY IS SUCH A FUNDAMENTAL CONSTITUTIONAL RIGHT THAT IT MUST BE ESTABLISHED AT THE TRIAL COURT LEVEL BY AN INQUIRY FROM THE COURT THAT ESTABLISHES SUCH WAIVER AS A KNOWING, INTELLIGENT WAIVER FREELY AND VOLUNTARILY MADE.

## STATEMENT OF THE CASE

On December 24, 1984, Bernard McCurtain was murdered.  His body was found on

December 30 on the west mesa. Investigation by the Bernalillo County Sheriff's Office revealed that Mr. McCurtain had been with his friend, Delbert Bernally, on the night of December 24, 1984. After going to a bar, they were given a ride by two people, the petitioner Andrew Santillanes, and James Sedillo. Neither petitioner nor Sedillo had ever had previous contact with McCurtain and Bernally. After Bernally and McCurtain accepted the ride, they asked Mr. Sedillo and Mr. Santillanes if they knew where to get some marijuana. The petitioner said he could get some and they drove around for awhile, ending up on the west mesa where Mr. Santillanes believed there would be people selling marijuana if a shipment had come in as expected. The car stopped on the mesa and Sedillo and McCurtain got out and talked to each other.

Mr. Bernally testified that the petitioner and he left the vehicle. Mr. Bernally's testimony was that the petitioner, in the dark, with no other illumination, allegedly gave Mr. Bernally a vicious look and in return Mr. Bernally somehow frisked Petitioner and felt something hard in his pocket, like a box. Bernally then said he became scared and ran away, leaving his friend McCurtain and James Sedillo talking. Mr. Bernally testified that after Mr. Bernally had frisked the Petitioner and felt something hard and ran away, Mr. Bernally came after him, yelling at him. Mr. Bernally got away and went to the nearest house where he called police. Inexplicably, Mr. McCurtain was not found until December 30, 1984.

The Sheriff's Department received information as a Crime Stoppers tip implicating James Sedillo as the murderer of Mr. McCurtain. The informant claimed there was another

2

person present. Mr. Sedillo was arrested and promptly made a "sweet heart" deal with the police in return for testifying that the petitioner herein was actually the killer of Mr. McCurtain.

Based on the claim of Mr. Sedillo, who was originally implicated as the murderer or by the Crime Stoppers tipsters, the police arrested the petitioner herein. The petitioner refused to make any statement to authorities. Pursuant to a New Mexico state contract for conflict cases, private attorney Joseph Riggs was appointed to represent Mr. Santillanes.

Petitioner's defense counsel filed numerous motions, including a motion to release exculpatory information and to identify and produce informant. Immediately before trial, on or about July 9, 1985, the court granted the petitioner's pretrial motion for disclosure of exculpatory information, but denied defendant's motion to identify and produce the informant who provided the information. The court refused to hold an in camera hearing to examine the possibility that the detective could now identify the informant or to make any effort to do so after the detective admitted that he might be able to identify the informant if he did some checking. Counsel for the defendant raised no other defenses than to attack the credibility of the co-defendant, James Sedillo, and challenge the state to produce the names of the confidential informants. Counsel is unclear what purpose would have been served by the disclosure of the confidential informant's names in terms of the defense that was raised by the petitioner. It is unclear from the record and it was unexplained at the evidentiary hearing by counsel for defendant other than it raised an issue worthy of appellate review.

3



Counsel cannot explain how disclosure of the identities of the confidential informants would have helped the defense that was used.

The defendant did not testify and the jury convicted the Petitioner of murder and two counts of attempted robbery. He has been sentenced to a total term of imprisonment of 36 years. An appeal was filed and several Petitions for Writs of Habeas Corpus subsequently followed. This present Petition for Writ of Habeas Corpus in federal court is admittedly ripe for resolution by this Court because the petitioner is in custody and counsel for the respondent had initially indicated that the petitioner had exhausted his state court remedies as to the issues raised in the petition or has no other available state mechanism for obtaining review. Subsequently, a challenge has been made that the matter is procedurally defaulted by the petitioner because his most recent Petition for Writ of Certiorari to the New Mexico Supreme Court was allegedly filed untimely and therefore his federal petition is procedurally defaulted. The record of all of the prior matters, petitions, etc. is contained in the court's record.

**INTRODUCTION**

There are two basic issues and several sub-issues involved in this habeas petition. Counsel for the respondent argues that this petition is procedurally defaulted because the petitioner failed to have his state Petition for Certiorari on his state Writ of Habeas Corpus filed before the New Mexico State Court within the procedural time limits set by the rules of the New Mexico Supreme Court. Petitioner, through counsel, answers that there is "cause

4

and prejudice" which over rides the alleged procedural default.  Furthermore, the petitioner

has asserted a claim of "actual innocence" to overcome the alleged procedural default.

Petitioner seeks reversal of his conviction and the granting of this habeas corpus

petition because his trial counsel was ineffective.

Of primary importance is the issue of whether the petitioner freely and knowingly

waived his right to testify.  Petitioner says that he did not testify because of the advice given

to him by trial counsel.   Petitioner claims this was ineffective assistance of counsel.

The reason why the petitioner did not testify, according to his trial counsel, was

because if he did testify, his prior conviction would be brought out before the jury.  Trial

counsel assumed that if the jurors knew his prior it would be so prejudicial that the petitioner

"should not testify" for that reason alone.  Because of this decision, by counsel, the petitioner

was precluded from taking a polygraph.  Since counsel decided that the defendant was not

going to testify, then the trial counsel believed that the polygraph evidence, even if favorable,

could not be admitted.  Petitioner submits that these decisions, in light of the totality of

circumstances, fail the *Strickland v. Washington,* 466 U.S. 668 (1984) test.

In addition, counsel argues that not only was this bad advice below the level of

professional standards, but this decision in the circumstances of this case was not and should

never be harmless error.

Of even greater importance, counsel requests that this court set a new rule that

whenever a defendant decides not to testify or to testify, that the court conduct a separate and

5

distinct inquiry to insure that the defendant is making a knowing and intelligent waiver or exercise of this fundamental Constitutional right. Absent such careful inquiry, the decision whether or not to testify, can never be justified because the defendants Fifth and Fourteenth Amendment rights to due process of law and Sixth Amendment right to effective assistance of counsel have been violated.

## PETITIONER'S PETITION MAY NOT BE DISMISSED FOR PROCEDURAL DEFAULT

On May 5, 1998, counsel filed a memorandum in support of petitioner's non-procedural default in this habeas petition. Counsel herein incorporates by reference and adopts the arguments and authorities advanced in that memorandum. In addition, counsel makes reference to and incorporates the testimony at the evidentiary hearing and the affidavits of Robert S. Chappell filed on April 29, 1998, and the affidavit and attachment of Jane Gurule, Deputy Chief Clerk of the New Mexico Supreme Court filed on March 12, 1999.

The "Gurule" affidavit establishes that the post mark on the envelope containing the petitioner's Petition for Writ of Certiorari to the New Mexico Supreme Court is March 28, 1997, at Santa Fe, New Mexico. It also shows that it was properly addressed. During the course of the evidentiary hearing held before Magistrate Svet on May 5, 1998, the question arose whether the petitioner mailed his Petition for Certiorari to the New Mexico Court of Appeals or the New Mexico Supreme Court. This affidavit and the copy of the envelope

proves petitioner properly addressed his petition.

At the evidentiary hearing petitioner testified that he was in lock down until March 5, 1997. Thereafter, he met with Mr. Chappell during the 20-minute chow hall to request a meeting with him at the library to assist petitioner in preparing his pleadings to the New Mexico Supreme Court. Petitioner in prison has been found to have reading knowledge at the fifth grade level. At the evidentiary hearing held on May 5, 1998, Mr. Santillanes testified to the circumstances of the several meetings that he had with Mr. Chappell in the law library. Finally, he swore, consistent with Mr. Chappell's affidavit, that the date he put on the Petition for Writ of Certiorari was the day that he signed it, which was March 19, 1997. He also swore that he put it in the prison mailbox outside the law library immediately on March 19, 1997. This act was witnessed by Mr. Chappell and by the New Mexico State Prison guard located outside the prison law library (Corrections Officer Randy Ray). The cause for the delay in the document arriving at the post office cannot be attributed therefore to the petitioner. It must be attributed to the prison. Mr. Chappell regularly and in the ordinary course of his assistance to other inmates insures that the date that is placed on the document is the same day that it is placed in the prison mail box. These unexplained delays have happened before. Letters are placed in the prison mail box and then go to the prison mail room, eventually ending up at the Santa Fe Post Office where they are stamped for delivery by the Post Office. This letter placed in the prison mail box on March 19, 1997, was not received by the United States Post Office until March 28, 1997.

7

On June 29, 1999, the Tenth Circuit Court of Appeals decided the case of *United States v. Gray*, 1999 W.L. 436403, number 98-6043. In that federal habeas pursuant to 28 U.S.C. § 2255, the court found that when an institution does not have a method for recording the dates when documents are received by the prison mail system, then the date that the petitioner places on his certificate of service shall serve as the date when the document was received. Accordingly, in the *Gray* case, the court ruled that the petitioner's petition could not be barred for failing to file his petition timely. The New Mexico prison also has no system for logging in mail that departs the institution. The application of the *Gray* case is inescapable to the circumstances of this petitioner. The authority of *U.S. v. Gray* fully supports the conclusion that this petition cannot be procedurally defaulted for alleged untimely filing of his Petition for Writ of Certiorari with the New Mexico Supreme Court.

In addition, the petitioner has asserted that any alleged procedural default is over come because he is arguably innocent of the charges. This issue is intrinsically entwined with the issue of his trial counsel's ineffective assistance at trial. Petitioner testified at the evidentiary hearing before the Honorable Judge Svet on April 6, 1999, to what he would have testified to at trial if he had been allowed to testify. The advice provided to the petitioner by his trial attorney not to testify fails the standards enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984).



## TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE
## WHICH WAS NOT HARMLESS ERROR

In order to establish his right to habeas corpus relief on his ineffective assistance of counsel claim, petitioner must satisfy the two part test of the *Strickland* case. Petitioner must first show that in light of all of the circumstances that counsel's performance was deficient in light of "prevailing professional norms." The petitioner must show that counsel's representation fell below an objective standard of reasonableness. *Romero v. Tansy*, 46 F.3d 1924, 1029 (10th Cir.), *cert. denied*, 115 S.Ct. 25, 91 (1995). Secondly, the defendant must show that the deficient performance prejudiced his defense and that there is a reasonable probability that the outcome of the proceeding would have been different had the errors not occurred. *Id.* at 687-88, 691-92, 694. *See also Hatch v. State of Oklahoma*, 58 F.3d 1447, 1457 (10th Cir.), *cert. denied*, 116 S.Ct. 1881 (1996).

Under these standards the petitioner must demonstrate that counsel's performance was deficient by identifying specific "acts or omissions [that] were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. In *Osborn v. Shillinger*, 861 F.2d 612, 625 (10th Cir. 1988), the court defined the reasonable standard as "the exercise [of] the skill, judgment and diligence of a reasonable, competent defense attorney." (*Quoting United States v. Burney*, 756 F. 2d 787, 790 (10th Cir. 1985)). Counsel must "inform himself ... fully on the facts and the law" and thoroughly advise the client "concerning all aspects of the case. A.B.A. Standard 4-38, 4-5.1(a); see *Strickland*, 466 U.S. at 688; *United States v.*

9

*Loughery*, 908 F.2d 1014, 1018 (D.C. Cir. 1990). A single important error is enough for an ineffective claim to prevail. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

The second prong of the *Strickland* test is met by a showing that a defendant would have had a reasonable chance for success at trial but for his counsel's errors. *Harrison v. Jones*, 880 F.2d 1279, 1283 (11th Cir. 1989). However, a "defendant need not show that counsel's deficient conduct more likely than not altered the outcome of the case." *Strickland*, 466 U.S. at 693; *Osborn*, 861 F.2d at 626. Rather, a showing of prejudice from his counsel's shortcomings must be made "in view of the strength of the government's case." *United States v. Miller*, 907 F.2d 994, 997 (10th Cir. 1990). In *Strickland* the court went on to say that:

> An ineffective assistance claim asserts the absence of one of the crucial assurances that the result of the proceeding is reliable, so finality concerns are somewhat weaker and the appropriate standard of prejudice should be somewhat lower. The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.

*Strickland*, 466 U.S. at 694.

The court further explains that "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

The right of assistance of counsel is "the right to the effective assistance of counsel."

*McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). A defendant is entitled under the Sixth Amendment to the benefit of competent counsel who insures that the prosecution's case is subject to the "crucible of meaningful, adversarial testing." *United States v. Chronic*, 466 U.S. 648, 656 (1984). The right to effective assistance of counsel exists "in order to protect the fundamental right to a fair trial." *Strickland*, 466 U.S. at 684. The ultimate question presented by an ineffectiveness claim is whether counsel's errors "so upset the adversarial balance between the defense and the prosecution that the trial was rendered unfair and the verdict rendered suspect." *Nicks v. Whiteside*, 475 U.S. 157, 175 (1986).

Within these standards consider the record from the evidentiary hearing held on April 6, 1999. First, trial defense counsel Joseph Riggs had, after 14 years, only a minimal recollection of his representation, strategy and conduct of the trial. Transcript (herein after "Tr.") at 44. The only thing that counsel was certain about was that he believed (and still believes) that Mr. Santillanes was innocent. Tr. at 44.

At the time of his representation, Mr. Riggs was in private practice with a State Public Defender contract. That contract in 1984 paid approximately $2,200.00 a month for six cases from fourth degree felony cases to first degree murder cases. That would be about $350.00 a case. He was paid no more than that for his representation in this case. Defense counsel remembered that the person who was identified in a Crime Stoppers tip, (James Sedillo) as the murderer, was arrested on that Crime Stoppers tip. He made a quick deal with the government in return for testifying against Mr. Santillanes and walked away with a "sweet

heart deal." Tr. at 44. Defense counsel's focus early and throughout the course of preparation and at trial was almost exclusively on the credibility of Mr. Sedillo. Unfortunately, that decision may have been to the exclusion of other more appropriate or additional approaches to defend Mr. Santillanes.

From the very beginning, defense counsel pursued his strategy in defense of Mr. Santillanes by attacking Mr. Sedillo. He filed a pretrial motion to disclose who the confidential informants to the Crime Stoppers program were. The police said that they only had first names. Defense counsel thought at the time that he had a duty to acquire the names of the witnesses. He felt that he had a Due Process challenge and it was an important issue and had a significant appellate chance of success. Tr. at 46. Counsel concluded that the James Sedillo, who was pointing the finger at Mr. Santillanes, was not a credible witness in his opinion. Tr. at 46.

In addition, the surviving victim testified and gave a statement that Andrew Santillanes and he went off in another direction from the murdered victim and James Sedillo. Therefore, that testimony showed that Mr. Santillanes was not involved in either being the killer or having participated in the killing or knowledge of any prior plan to kill or rob anyone. Defense counsel thought these two factors gave him a strong defense.

Defense counsel was aware of the defendant's prior criminal record. He was aware and informed the defendant that if he testified at trial his prior criminal record would come in. Counsel feared that the prior criminal record would be so detrimental that for that reason

the defendant should not testify, especially in light of what he believed to be a weak case against the defendant. As a consequence, defense counsel advised the defendant not to testify.

The petitioner testified that he had asked his defense counsel to give him a polygraph. He also testified that he independently took a polygraph exam within the last several years and was told by the polygrapher at that time that he had passed the polygraph. Tr. at 25-27.

Defense counsel admitted that as a general rule he was willing to have any of his clients take a polygraph. The procedure for obtaining a polygraph was not difficult and is admissible by rules of the state of New Mexico. Furthermore, the taking of a polygraph would be a private matter. If the results were unsatisfactory or inconclusive the existence of the polygraph need not be disclosed to the prosecution since the defense was not going to be using it. *Tafoya v. Baca*, 103 N.M. 56, 702 P.2d 1001 (1988). However, once the decision was made that the defendant would not testify, defense counsel disclosed there would be no need and no purpose in taking a polygraph. He said the polygraph could not be used unless the defendant did testify. Tr. at 49.

Defense counsel could not recall whether or not a discussion of a polygraph exam was ever involved in his representation of this petitioner. Considering that this was a first degree murder case, defense counsel was asked if it wouldn't have been almost obligatory to have given the defendant a polygraph, especially in light of defense counsel's belief in the innocence of his client. Defense counsel did not directly answer that question. Instead of

13

admitting or denying that taking a polygraph would be a good idea in a first degree murder case, he said that his decision to proceed without defendant testifying was one that was based upon the weakness of the state's case combined with the defendant's prior record. No matter whether or not he took a polygraph, defense counsel believed that the prior record would "end up hurting him if he did testify, especially since I wanted to try to blame Sedillo for the crime." Tr. at 49-50.

Petitioner submits that professional prudence and minimal standards required defense counsel to first arrange a polygraph, and assess the results before deciding that defendant would not testify. New Mexico is the only state that has a standardized procedure allowing the admission of polygraph evidence. New Mexico Rules of Evidence 11-707. At least one federal appeals court has favorably reviewed and approved the New Mexico procedures. *United States v. Piccinonna*, 885 F.2d 1529 (11th Cir. 1989).

In preparation for trial, counsel repeatedly requested disclosure of the informant's names, including during the trial.

Although defense counsel has no specific recollection because of the passage of time regarding conversations with the defendant, his strategy after having lost the confidential informant issue did not change throughout the trial. Tr. at 53. The petitioner testified on April 6, 1999, that he asked defense counsel if he could testify for himself. Defense counsel told him that "it wasn't necessary to get on the stand, it wasn't in my best interest" "he felt that he had this case pretty well beat." Tr. at 7, 9. Furthermore, the petitioner did not know

14

that he could testify regardless of his attorney's advice. Tr. at 9.  Petitioner testified, "on the last day of trial I asked him if it would be too late if I could get on the stand to testify or defend myself because no one would -- I felt that they didn't want to do a defense in my case ... they didn't want to give me a defense in my case because I was denied every motion we gave to that court." Tr. at 36. The petitioner said that the defense counsel told him that "... he had it beat and not to worry, they had a good case, they had no evidence of any kind." Tr. at 36, 37.

Counsel submits that this strategy of defense counsel was deficient under the standards of *Strickland*.   Reasonable performance of counsel includes an adequate investigation of the facts, consideration of viable theories, and the development of evidence to support those theories. *Foster v. Lockhart*, 9 F.3d 722, 726 (8th Cir. 1993).  Under the American Bar Association standards, reasonable professional conduct requires counsel to "conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to guilt and degree of guilt or penalty." A.B.A. Standards for Criminal Justice, standard 4-4.1 at 4-53 (2nd Ed. Supp. 1986)(Emphasis added); *see Blackburn v. Foltz*, 828 F.2d 1177, 1183 (6th Cir.), *cert. denied*, 485 U.S. 970 (1988) ("Strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgements support limitations on investigation.") *Strickland*, 466 U.S. at 690-91.  Petitioner submits that the single minded focus on the attempt to discredit Mr. Sedillo (apparently and inexplicitly through disclosure of

15

confidential informants) did not meet the standard of professional judgement in light of the easy availability of a polygraph examination to verify the defendant's claim of innocence.

"Strategy" resulting from lack of diligence in preparation or failure to completely investigate a case is not protected by the usual presumption of counsel's competence. *Kenley v. Armontrout*, 937 F.2d 1298, 1304 (8th Cir.), *cert. denied*, 502 U.S. 964 (1991). An attorney cannot make a rational strategic choice when he has not yet obtained all of the facts on which a decision could be made about how best to represent his client. *Sanders v. Ratelle*, 21 F.3d 1446, 1456-57 (9th Cir. 1994). The attorney's conclusion that the defendant should not testify disregarded the defendant's wishes and the effect his testimony could have had on the jury. The final evaluation of the credibility of any witness is a factual matter for the jury and the defendant was entitled to have his credibility judged by the jury. *See Hersch v. Sullivan*, 942 F.2d 1501, 1516 (10th Cir. 1991). The final decision on whether or not to testify should have been made by the defendant, after a polygraph had been administered. The trial counsel's failure to order a polygraph and therefore his uninformed decision to keep the defendant from testifying was ineffective assistance of counsel.

*Strickland* does not hold that strategic choices are virtually unchallengeable. *Strickland* holds that "strategic choices made after thorough investigation of law and facts *relevant to plausible options are virtually unchallengeable." Strickland*, 466 U.S. at 690. The failure of defense counsel to even have his client take a polygraph examination is an inexcusable and inexplicable failure to meet professional standards. The ability to pay for

a polygraph was unquestioned.  Money would be made available for that purpose by the

Public Defender Department.  The possibility of testifying and admitting a favorable

polygraph result was denied the defendant.  Tr. at 45.

## TRIAL COUNSEL'S INEFFECTIVENESS WAS NOT HARMLESS ERROR

While defense counsel feared the effects of disclosing defendant's prior record to the

jury, the positive effect that the defendant could have had in front of the jury by testifying

(with or without a polygraph exam) cannot be under estimated.  This failure on the part of

defense counsel cannot be termed harmless error beyond a reasonable doubt under *Chapman*

*v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).  The *Chapman* case

establishes "that before a federal Constitutional error can be held harmless the court must be

able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman*, 386 U.S.

at 24.  The testimony of the defendant in this case, considering the evidence that the

government had available to it (which was not overwhelming or particularly strong) and in

light of all of the circumstances of the case, cannot be harmless.

> "Where the error is in keeping the defendant from the stand, the judge can
> consider the content of what the defendant might have said the same as for a
> non-party witness.  But he cannot weigh the possible impact on the jury of
> factors such as the defendant's willingness to mount the stand rather than avail
> himself of the shelter of the Fifth Amendment, his candor and courtesy (or lack
> of them), his persuasiveness, his respect for court processes. These are elusive
> and subjective factors, even among persons who might perceive and hear the
> defendant, but more significantly, they are matters neither communicated to
> an appellate judge nor susceptible of communication to him.  Appellate
> attempts to appraise impact upon the jury of such unknown and unknowable
> matters are purely speculative ... because we cannot truly judge the effect of

17



the defendant's being denied the right to take the stand, and because we should be concerned with protecting both the right to choose whether to testify and the substance of the testimony I suggest that the majority's reliance on *Chapman* is entirely misplaced."

*Wright v. Estelle*, 572 F.2d 1071, 1082 (1978)(dissent of Judge Godbold).  Wherefore, counsel submits that the single minded purposes of defense counsel to the exclusion of the defendant taking a polygraph to verify the truthfulness of his innocence or testifying were such fundamental errors as to deny the defendant effective assistance of counsel in the totality of the circumstances in this case.

## DEFENDANT'S CLAIM OF ACTUAL INNOCENCE

At the time of the defendant's arrest, he gave no statement to the police.  He exercised his Constitutional right of silence.  He was advised at trial not to testify and did not understand that he had a right to testify regardless of his counsel's advise.  His counsel's advice not to testify or not to prepare for trial by having the defendant take a polygraph was of such a low standard under the facts of this case that it fails the *Strickland* test.  At the evidentiary hearing on April 6, 1999, the defendant (petitioner herein) was afforded the first opportunity to testify to his side of what actually happened.  His testimony, if believed, would have proved his innocence of the charges for which he was convicted; murder and robbery.

The trial record not only was weak against this defendant but also the evidence presented was inconsistent and contradictory.  The witness against this petitioner, James

Sedillo, claimed that he and petitioner had planned the robbery for a couple of weeks. In fact the two Indians who were taken to the mesa had only just arrived in Albuquerque and did not previously know either James Sedillo or the petitioner. Significantly, the testimony of the surviving victim was that he and petitioner had gone off together and they were not involved, either one, with Mr. Sedillo and the actual murder of the victim. Defendant's version of events indicated, if believed, that there was no prior plan to commit a murder and that he had nothing to do and did not assist in any robbery, attempted robbery or murder.     The defendant's testimony, if believed, would have established his innocence and he should have been acquitted had he been allowed to testify. There is nothing inherently unbelievable about his testimony, nor is there anything particularly contradicted by the record at trial. On April 6, 1999, on cross exam, counsel for respondent failed to expose any contradictions, impeachment or inconsistencies in petitioner's testimony. This testimony speaks for itself and is a part of the record. The defendant has now established that he is arguably innocent of the crime and this overcomes the failure of the prison to promptly mail out Petitioner's Petition for Writ of Certiorari to the Supreme Court to the State of New Mexico in 1997.

### DEFENDANT'S WAIVER OF HIS RIGHT NOT TO TESTIFY IS A FUNDAMENTAL CONSTITUTIONAL RIGHT WHICH MUST BE ESTABLISHED BY A KNOWING, INTELLIGENT WAIVER, FREELY AND VOLUNTARILY MADE

The Fifth Amendment to the United States Constitutions provides that no defendant may be compelled to be a witness against himself. The Supreme Court of the United States

has interpreted that right to include that "criminal defendants have a right to testify on their own behalf under the Due Process clause of the Fourteenth Amendment, the Compulsory Process Clause of the Sixth Amendment and the privilege against self incrimination of the Fifth Amendment." *Rock v. Arkansas*, 107 S.Ct. 2704, 2708-2710 (1987). Unfortunately at the present time, there is neither a mechanism nor a procedure to insure that any defendant knowingly and intelligently exercises his right to remain silent or his right to testify on his own behalf. The Constitutional stature of this right to testify was recognized by the United States Supreme Court in *Faretta v. California*, 422 U.S. 806, 819-20 n.15 (1995 S.Ct. 2525, 2533, 1975). In that case, the Supreme Court analyzed the right to testify in strict Due Process terms.

> This court has often recognized the *Constitutional stature* of rights that though not literally expressed in the document are essential to Due Process of law in a fair, adversary process. *It is now accepted, for example, that an accused has a right ... to testify on his own behalf ... (Emphasis added).*

In addition, Justices Frankfurter and Clark in their separate opinions in *Ferguson v. Georgia*, 365 U.S. 570 (1961) recognized that the denial of the right of a defendant to testify in his own trial was a violation of Due Process of law.

The United States Supreme Court has also declared that the right to testify is also a Sixth Amendment right guaranteeing the defendant (with or without counsel) the opportunity to deny and meet the accusations leveled against him. *Walder v. United States*, 347 U.S. 62, 65, 74 S.Ct. 354, 256 (1954), and *Jenkens v. McKeithen*, 395 U.S. 411, 429, 89 S.Ct. 1843,

1852 (1969). This fundamental right is also protected by the right to present witnesses on his own behalf (in the following case, the witness being himself) *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920 (1967).

There are additional cases which recognize the fundamental right of a defendant to testify without specifying the amendment which guarantees that right. This right appears to be so obvious that these cases did not cite to a specific amendment when discussing the fact that the right to or not to testify is a fundamental Constitutional right. These cases include: *U.S. v. McCord*, 137 U.S.App.D.C. 5, 7, 420 F.2d 255, 257 (1969) ("As a matter of law, defendant has always vouchsafed the Constitutional right to testify."). *Fowley v. United States*, 410 F.2d 48, 53 (C.A. 9 1969)(The right to testify is a "basic Constitutional guarantee").

Additionally, authority is found in *Brooks v. Tennessee*, 406 U.S. 605, 612, 92 S.Ct. 1891, 1895 (1972). In that case, the court discussed at some length the fundamental Constitutional rights of defendants to testify or not to testify regardless of state laws. The court declared that "whether the defendant is to testify is an important tactical decision as well as a matter of Constitutional right." Earlier in the case of *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643 (1971), the court observed that no defendant can ever have a right to lie or to perjure himself, but "ever criminal defendant is privileged to testify in his own defense or refuse to do so." Therefore, it should be clear that pursuant to the Fifth, Sixth and Fourteenth Amendments to the Constitution that every defendant enjoys the fundamental Constitutional

21

right either to or not to testify if he so chooses regardless of what advice he may receive.

In every criminal case, there are certain defenses, there are certain issues, there are certain rights, which are personal to the defendant and may not be waived by any counsel. These include the right to go to trial or to enter into a plea agreement. *See Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709 (1969). This also includes whether or not to ask for a jury trial or (if the government agrees in federal court) to have the case heard by the Judge. *See Adams v. United States, ex rel McCann*, 317 U.S. 269, 63 S.Ct. 236 (1942) and *Patton v. United States*, 281 U.S. 276, 50 S.Ct. 253 (1930). Essential to the constitutionally protected personal rights of a defendant is a right whether or not to appeal. *Fay v. Noia*, 372 U.S. 391, 439, 83 S.Ct. 822, 849 (1963). Of equal importance is the fundamental constitutional right to the assistance of counsel or to represent oneself pro se at trial. *Faretta v. California, Id.*

These fundamental constitutional rights are contrasted with other less fundamental rights of defendants which therefore may be made by counsel without the knowledge or consent of the defendant, such as whether to object to illegally seized evidence. *Henry v. Mississippi*, 379 U.S. 443, 85 S.Ct. 564 (1965). Another example would be whether or not the lawyer should object to a jury composition. *Winters v. Cook*, 489 F.2d 174 (5th Cir. 1973) *en banc*.

Because fundamental Constitutional rights carry with them the personal right of the defendant exclusively to exercise or waive that right, courts have set forth procedures for

insuring that any waiver of a fundamental Constitutional right is freely, voluntarily made without threats, coercion or other promises to the defendant.

Not only is the right of a defendant to plead guilty instead of going to trial a fundamental Constitutional right, but the courts make detailed inquiries of the defendant to insure that the decision to plea and not go to trial is being freely and voluntarily made. The standard plea agreement in federal court must be in writing and contain all terms, understandings and agreements of the parties. The plea agreement is then reviewed by the judge with the defendant who reviews the rights that the client is giving up and addresses his willingness to do so without coercion or promises not contained within the plea agreement. *See Boykin, op cit.*

Likewise, when a defendant decides to represent himself at trial the court also makes significant and particularized personal inquiry with the defendant to insure not only that he knows he is waiving a fundamental Constitutional right, but also what he is giving up by waiving that right, and the possible adverse consequences. That inquiry is made by the court personally with the defendant and a record is made to satisfy the court, and any appellate court, that the decision to proceed without counsel is a knowing, intelligent and freely made decision. *See Faretta, op cit.*

The same type of inquiry is made with the same concerns for the fundamental Constitutional right of each defendant on whether or not to proceed with a jury trial or to waive a jury trial. Likewise the court makes specific detail and personal inquiry of the

defendant to insure that his waiver of the right to a jury trial is freely, voluntarily and knowingly made without threats or coercion. *Adams, op cit,* and *Pattin, op cit.*

While it appears clear that the right of the defendant to testify or not to testify is likewise a personal, fundamental, Constitutional right, there is no similar kind of inquiry that the court engages in to insure that defendant is exercising his right to testify or not to testify freely, voluntarily, knowingly and without coercion or other promises or inducements. No questions are asked of the defendant at all. Instead, this court finds itself fourteen years down the road looking at a man who has been convicted who now says he wanted to testify but his lawyer advised him not to. A petitioner who now swears that he asked his lawyer if he could testify and was told no, and did not know that he had a right to testify regardless of his lawyer's advice is put in an extremely disadvantageous position. That is exactly the situation presented by the petitioner herein.

At this distant time courts are hard put to assess the veracity of any petitioner's claim. These belated claims are often greeted by the counsel for the respondent with cynicism and disbelief, and summary denials by the reviewing court.

The above outlined inquiries should, as a matter of fundamental Constitutional law and the defendant's Constitutional rights, be required in every case whether a defendant chooses to not testify or to testify. The trial judge is in the best position to insure that a fundamental Constitutional right is being exercised or waived in a fashion which meets Constitutional standards. At this late day, it is extremely difficult for a reviewing court to

assess the content of what the defendant might have said in the same way that can be done at the time of trial. The reviewing court cannot weigh the possible impact upon the jury such factors as the defendant's willingness to subject himself to the scrutiny of cross examination and waive his Fifth Amendment right to silence. The reviewing court cannot assess the defendant's persuasiveness or lack thereof. Most importantly the reviewing court cannot now assess the sincerity of the defendant's assertion that he wanted to testify but was denied or advised not to by his trial counsel. To assess at this late date the declaration of the petitioner that he wanted to testify is susceptible to skepticism and cynicism. After all, the petitioner at this point has been convicted and sentenced to a long period of time and therefore, his words today are going to be considered suspect. Whatever he may have testified to fourteen years earlier at the time of trial is not the total issue. The present issue is whether the defendant knowingly, intelligently and freely waived his right not to testify with full knowledge he had the right to testify regardless of his attorney's advice. The right to counsel, trial by jury, to plead or go to trial and to testify on his own behalf all derive from the same Constitution, prerequisites, principles and logic, and this fundamental right should be subject to the same standards and procedures at trial.

These arguments are eloquently advanced by the dissent in the case of *Wright v. Estelle*, 572 F.2d 1071 (1978) by Judge Godbold of the Fifth Circuit Court of Appeals. The dissent is on pages 1074 through 1084. That opinion clearly establishes that there is substantial legal precedent and sound Constitutional reasons to require a procedure between

25

the court and the defendant at the time of trial to insure that the defendant has the opportunity to testify or refuse to testify. Although the dissent in *Estelle* has not been followed, the logic of it is unquestionable. In *Estelle*, *Id.*, the court would have reversed the conviction and granted the relief requested because the court found that there was neither harmless error (because there can be no harmless error on a fundamental constitutional right) and that the defendant did not waive his rights. The court said, "whether this case is approached as a fundamental right case or as an ineffective counsel case there has been no constitutionally effective waiver by the defendant." *Estelle* at 1084.

Counsel requests that this court adopt the reasoning, the logic and based on the constitutional and fundamental personal Constitutional rights of the defendant hold that this Petition for Writ of Habeas Corpus be granted because the defendant's right to testify was not protected by his attorney and that the petitioner did not freely and voluntarily, knowingly and intelligently waive that right. For these reasons, petitioner should be granted a new trial where he can be offered the opportunity to testify as is his Constitutional right.

The failure of the courts to date to require such a procedure is troublesome especially in this case. Under the facts of the case, defense counsel felt strongly that the defendant was not only innocent but that the case against him was so weak that he would not be convicted. Defendant on the other hand repeatedly asked his attorney if he could testify and was advised not to. He did not understand that he could testify in spite of his attorney's advice. Defendant asked if he could have a polygraph taken but a polygraph was not taken because

26

a polygraph would not have been admissible unless the defendant testified. Since counsel had early on made a decision that his testimony would be unnecessary or even possibly detrimental, no polygraph was taken. Had all these things been explained to the defendant at the time of the trial, an intelligent, knowing, free and voluntary waiver could have been obtained or another course of conduct could have been taken in compliance with the defendant's Constitutional rights.

Wherefore, under the facts of this case and based on the fundamental Constitutional rights that have been denigrated and disregarded in this case, counsel requests that this court grant this Petition for Writ of Habeas Corpus and rule that in criminal cases there must be an inquiry by the court with the defendant personally, establishing whether or not he wishes to testify and whether or not he understands the ramifications and his rights in testifying or choosing not to testify.

> Respectfully submitted,
> FEDERAL PUBLIC DEFENDER
> 111 Lomas, NW, Suite 501
> Albuquerque, NM 87102
> (505) 346-2489
>
> By _____
> Roger Finzel

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the following pleading was mailed to Assistant Attorney General Patricia Gandert, on this _26_ day of July, 1999.

By _____
Roger Finzel

27