IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

99 SEP -9 AM 11: 27

*Rob/'manuel*
CLERK-SANTA FE

ANDREW SANTILLANES,

    Petitioner,

vs.

                                  Civ. No. 97-549 LH/LFG

TIM LEMASTER, Warden,

    Respondent.

## RESPONDENT'S MEMORANDUM BRIEF

Respondent through counsel submits this memorandum brief in opposition to the petition for writ of habeas corpus. Pursuant to the magistrate judge's order at the evidentiary hearing held on April 6, 1999, this brief is due forty-five (45) days after the filing of Petitioner's brief. Petitioner's brief was filed on July 26, 1999 making this brief due on September 9, 1999. (Tr. 4/6/99, 67).[1]

## PRELIMINARY STATEMENT

This is a habeas corpus action brought pursuant to 28 U.S.C. § 2254. Petitioner challenges the judgment and sentence entered in the case of State of New Mexico v. Andrew Santillanes, No. CR 39227, Second Judicial District Court, Bernalillo County. Petitioner was convicted of felony murder and two counts of attempted armed robbery. He was sentenced to life imprisonment for murder and given three years on each attempted armed robbery charge, all sentences to be served consecutively. (Answer, Ex. A). The New Mexico Supreme Court affirmed his conviction. (Answer, Ex. F).

---

[1] Citations to the transcript of the evidentiary hearings held in this case are to the date of the hearing and the page number of the transcript.

1



Petitioner filed this federal habeas corpus proceeding challenging the constitutional validity of his convictions. In his petition, he raised two issues:

1. Conviction obtained by constitutional failure of the prosecution to disclose to the Defendant evidence favorable to the Defendant-Petitioner (i.e. confidential informant's statements made by co-defendant turned state witness and peace officer).

2. Denial of effective counsel at trial and on appeal (competence, scope of representation, diligence and communication).

Issues raised in his petition which were not briefed are deemed abandoned. Therefore, issue one has been abandoned.

Although Respondent did not raise the issue of procedural default, the Magistrate Judge *sua sponte* raised the issue and recommended that the petition be dismissed with prejudice due to Petitioner's procedural default of his claims in state court. The Magistrate Judge found that Petitioner had procedurally defaulted his claims because Petitioner did not timely seek certiorari review of the denial of his third state habeas petition. (Magistrate Judge's Proposed Findings and Recommended Disposition filed on August 13, 1997.). The district court did not adopt the proposed findings and recommended disposition and remanded the case to the Magistrate Judge for further findings and another recommendation. Two evidentiary hearings were held in this case on May 8, 1998 and on April 6, 1999, and briefing of the case followed.

In his memorandum brief in support of the petition, Petitioner presents the following issues for review:

I. Whether Petitioner's federal petition for a writ of habeas corpus should be dismissed for procedural default in that his petition for writ of certiorari to his state petition for writ of habeas corpus was not received by the New Mexico Supreme Court within the time required by the rules of the New Mexico Supreme Court.

II. Whether Petitioner has established through cause and prejudice and/or actual innocence that his petition should not be dismissed for the alleged procedural default.

III. Whether his counsel was ineffective at trial in limiting his defense to cross examination of the former co-defendant cooperating witness, alleged actual murderer instead of exploring a polygraph with Defendant. Furthermore, counsel was ineffective for then advising the client not to testify once having excluded the possibility of the Defendant being able to present a polygraph regarding his actual innocence.

IV. Whether trial counsel's ineffective assistance constitutes harmless error.

V. Whether the Defendant's waiver of his right not to testify is such a fundamental constitutional right that it must be established at the trial court level by an inquiry from the court that establishes such waiver as a knowing, intelligent waiver freely and voluntarily made.

Issue V as presented in his Brief is different from the issues presented in his petition for writ of habeas corpus. Petitioner's memorandum brief filed in support of the petition raises different issues than those presented in his pro se petition. With the inclusion of these additional issues, Petitioner presents this Court with an unexhausted petition.

The exhaustion doctrine requires a state prisoner to fairly present his or her claims to the state courts before a federal court will examine them. Demarest v. Price, 130 F.3d 922 (10th Cir. 1997). In order for there to be a fair presentation of a prisoner's claims to the state courts, a prisoner must present the substance of the claims to the state courts. Id. "The prisoner's allegations and supporting evidence must offer the state courts 'a fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim." Id. at 932, quoting Anderson v. Harless, 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982) (citing Picard v. Connor, 404 U.S. 270, 274, 92 S.Ct. 509, 511, 30 L.Ed.2d 438 (1971).

At the second evidentiary hearing held in this case, Petitioner stated that this was the first time that he told his side of the story. (Tr. 4/6/99, 10-13, 38-39). By his own statement, Petitioner never presented to the state courts the substance of the claims underlying his assertion regarding his right to testify. This claim has never been presented to the state courts in this

context.  With the inclusion of this claim, Petitioner presents unexhausted issues which should bar review of his petition in this Court.

One of the requirements for review by the federal courts is that a Petitioner exhaust his state court remedies by presenting the claims to the state courts.  This claim regarding the waiver of his right not to testify was never raised in his direct appeal or in his state habeas corpus petition.  Therefore, it is inappropriate for this Court to consider this claim.  The substance of Petitioner's claim regarding waiver of his right not to testify as argued in his Brief was not fairly presented to the state courts.  Petitioner never argued to the state courts that his waiver of his right not to testify is such a fundamental constitutional right that it must be established at the trial court level by an inquiry from the court that establishes such waiver as a knowing, intelligent waiver.

The claim also has been procedurally defaulted.  Federal courts generally do not review issues that have been defaulted in state court on an independent and adequate state procedural ground, unless the default is excused through a showing of cause and actual prejudice or a fundamental miscarriage of justice.  See Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991).  In the present case, Petitioner procedurally defaulted this claim of waiver of the right to testify because of his failure to present the claim to the New Mexico courts on either direct or collateral review.  Petitioner's failure to raise this specific claim either on direct appeal or in his state petition for habeas corpus would be considered a waiver of those claims by the New Mexico courts.  See Faulkner v. State, 86 N.M. 715, 526 P.2d 1308, 1308-09 (Ct. App. 1974); Jackson v. Shanks, 143 F.3d 1313, 1318 (10th Cir.), cert. denied, 119 S.Ct. 378, 142 L.Ed.2d 312 (1998).

Petitioner's failure to raise this claim regarding the waiver of his right not to testify constitutes a procedural default of the claim. Petitioner's failure to raise the claim of waiver of his right not to testify constitutes an independent, adequate state procedural ground for barring review of the claim unless Petitioner can demonstrate cause and prejudice for his failure to raise this claims or a fundamental miscarriage of justice. Id. Petitioner has not shown any cause nor prejudice from his failure to raise the substance of his claim. Because of Petitioner's procedural default of this claim, this Court should not consider the claim.

## ARGUMENT

The petition should be dismissed because Petitioner received a full and fair hearing of his claims in state court and relief on those claims was denied by decisions which constitute neither an unreasonable determination of the facts nor results contrary to clearly established federal law. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), codified in part as 28 U.S.C. §2254(d), established a new standard of review for habeas petitions in federal court which bring claims which previously were adjudicated on the merits in state court.

AEDPA, codified at 28 U.S.C. §§ 2254(d) & (e) made several changes to the habeas corpus statutes. One of the changes made was to increase the deference given to State court findings. The pertinent provision provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

In federal habeas corpus proceedings, the federal court applies a presumption of correctness to factual findings and credibility determinations and to the legal conclusions reached by the state courts unless the petitioner rebuts the presumption by clear and convincing evidence. Before the 1996 amendments found in AEDPA, the presumption applied only to factual determinations. Now, a federal court must give deference to state legal determinations as well as to mixed questions of law and fact. "[T]he AEDPA increases the deference to be paid by the federal courts to the state court's factual findings and legal determinations." Houchin v. Zavaras, 107 F.3d 1465, 1470 (10th Cir. 1997). Accordingly, this Court must afford the presumption of correctness to the factual findings of the trial court as well as the legal conclusions stated in the decision of the New Mexico Supreme Court which bear directly on the claims before this Court.

In addition to increasing the deference to be given to the state court's findings, AEDPA amended 28 U.S.C. § 2254(d) which sets forth the deference to be afforded the state's legal determinations. It provides that the writ shall not be granted with respect to any claim adjudicated on the merits in the state court unless the adjudication of the claim

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of clearly, established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Petitioner is not entitled to relief under the standard of review mandated by AEDPA. The New Mexico Supreme Court's decision is not contrary to nor does it involve an unreasonable application of clearly established federal law.

## POINT I

### PETITIONER PROCEDURALLY DEFAULTED HIS CLAIMS.[2]

Petitioner procedurally defaulted his federal habeas claims by failing to file a timely petition for certiorari from his third state habeas petition in the New Mexico Supreme Court. Rule 12-501 NMRA 1999, required petitioner to file any petition with the supreme court clerk within 30 days after final action by the district court. The rule specifically does not allow an additional three days for mailing. Petitioner failed to file a timely petition for certiorari in this case.

From the record available, it appears that the New Mexico Supreme Court initially accepted the petition for filing. However, the clerk determined that the petition did not comply with Rule 12-501, because it was untimely. Pursuant to New Mexico rules of procedure, the clerk refused to file the petition.

The law in New Mexico has been settled for many years that late filing of a petition for certiorari is a jurisdictional bar and such petitions have not been considered by the New Mexico Supreme Court. Serna v. Board of County Commissioners, 88 N.M. 282, 284, 540 P.2d 212 (1975); Gulf Oil Corp. v. Rota-Cone Field Operating Co., 85 N.M. 636, 515 P.2d 640 (1973). By adoption of the rules of appellate procedure, the New Mexico Supreme Court has determined that, "[f]iling by mail is not complete until actual receipt." Rule 12-307(A) NMRA 1999. There is no special rule for pro se inmates or prisoners.

The New Mexico Supreme Court has delegated to the clerk the authority to refuse to file any document which does not comply with the rules. Rule 23-102 NMRA 1999 sets forth as one of the duties of the clerk:

> H.      Documents not complying with rules. It shall be the duty of the clerk to enforce the several requirements of these rules by refusing to file documents not complying therewith.

---

2 This issue was previously addressed in Respondent's Response to "Memorandum in Support of Petitioner's Non-Procedural Default in this Habeas Petition" filed on May 14, 1998.

The New Mexico Supreme Court Rules grant authority to the clerk to refuse for filing non-conforming documents. The petition filed in this case did not conform with Rule 12-501 because it was untimely and the clerk refused to file it.

In habeas corpus proceedings federal courts do not review the lawfulness of a prisoner's custody when it results from a state court judgment that is based on independent and adequate state grounds. Coleman v. Thompson, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); Andrews v. Deland, 943 F.2d 1162, 1188-89 (10th Cir. 1991), cert. denied, 502 U.S. 1110, 112 S.Ct. 1213, 117 L.Ed.2d 451 (1992). The independent and adequate state ground doctrine was developed by the United States Supreme Court in Harris v. Reed, 489 U.S. 255, 260, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) and Wainwright v. Sykes, 433 U.S. 72, 81-82, 97 S.Ct. 2497, 2503-2504, 53 L.Ed.2d 594 (1977).

One independent and adequate state ground is, "when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." Coleman v. Thompson, 111 S.Ct. at 2554. The New Mexico Supreme Court's refusal to consider petitioner's untimely petition for certiorari was an independent and adequate state ground in accordance with the test stated in Andrews v. Deland, supra. 943 F.2d at 1190.

This Court should not consider petitioner's federal habeas corpus petition when the petitioner has not given the highest state court the opportunity to consider his claims by way of certiorari. Ballinger v. Kerby, 3 F.3d 1371, 1374 (10th Cir. 1993); Dulin v. Cook, 957 F.2d 758, 759 (10th Cir. 1992). In Coleman v. Thompson, supra., the United States Supreme Court refused to consider a federal habeas petitioner's claims because his notice of appeal to the Virginia Supreme Court from a state habeas had been filed three days late causing the Virginia Supreme Court to deny review.

As authority for his argument, Petitioner cites to the case of <u>United States v. Gray</u>, 182 F.3d 762 (10th Cir. 1999) which allowed the benefit of the "mailbox rule" to a federal prisoner incarcerated at a federal penitentiary who filed a motion to vacate his sentence under 28 U.S.C. § 2255. There is no reason to apply the "mailbox rule" rationale of <u>Houston v. Lack</u>, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), to this case since the present case deals with the application of New Mexico rules of procedure not federal rules. In <u>Houston</u>, the United States Supreme Court held that a pro se prisoner's notice of appeal was filed for purposes of the time limit under Rule 4(a)(1) of the Federal Rules of Appellate Procedure, at the moment of delivery to prison authorities for mailing to the court.

Because the "mailbox rule" is a rule of interpretation of the federal rules, it has no applicability to New Mexico rules of procedure for New Mexico courts. As the Tenth Circuit noted in the case of <u>Jenkins v. Burtzolf</u>, 69 F.3d 460, 461 (10th Cir. 1995):

> The rationale of *Houston* was not constitutional or equitable in nature; rather, it was based on an interpretation of the word "filed" in the rule and statute governing the timeliness of notices of appeal. The Court held that a notice of appeal could be deemed timely "filed" upon delivery to the prison authorities for mailing.

In the <u>Jenkins</u> case, a federal prisoner with a pro se habeas corpus petition did not file a timely notice of appeal although he allegedly mailed the notice on the same date that he received the order. Jenkins had alleged that because of the transfers from facility to facility while he was in continuous custody that he did not receive his copy of the order in the mail until after he returned to jail. The Tenth Circuit addressed the issue as "whether the delay in Jenkins' receipt of the district court order should be considered in determining the timeliness of the appeal." <u>Jenkins</u>, 69 F.3d at 461. The Tenth Circuit concluded that even if the Court accepted as true the

unverified allegations in the prisoner's papers, he failed to meet the requisite time limits for appealing and for moving to extend the time for appeal.

Similarly in the present case, even assuming that Petitioner mailed the petition for certiorari on March 19, 1997, he still failed to meet the requisite time limits for filing a petition for writ of certiorari under New Mexico law. Unlike the federal courts, the State of New Mexico has no special rule for prisoners. It would be inappropriate for this Court to apply the rationale of the United States Supreme Court's interpretation of its federal rule to New Mexico's appellate practice which has its own rules of procedure. The New Mexico Supreme Court has adopted its own procedural rules regarding the filing of documents and this Court should defer to them.

Petitioner would have this Court ignore his procedural default. He would have this Court disregard the United States Supreme Court's requirement that state procedural rules be honored by federal courts and disregard "the important interests served by state procedural rules at every stage of the judicial process, and the harm to the States that result when federal courts ignore these rules...." Coleman v. Thompson, 111 S.Ct. at 2564. One of the state's important interests is finality of proceedings. 111 S.Ct. at 1565. One of the most significant costs of federal habeas review is the cost to finality in state criminal litigation. 111 S.Ct. at 2563. "We now recognize the important interest in finality served by state procedural rules, and the significant harm to the States that results from the failure of federal courts to respect them." 111 S.Ct. at 2565.

The Supreme Court requires that a state procedural bar be honored regardless of the nature of the federal claim unless cause and prejudice or a fundamental miscarriage of justice is demonstrated. 111 S.Ct. at 2564, 2565. "By filing late, Coleman defaulted his entire state collateral appeal." 111 S.Ct. at 2564 "[A] constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having



jurisdiction to determine it."  111 S.Ct. at 2565, quoting with approval <u>Yakus v. United States</u>, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944).

The New Mexico Supreme Court's bar against late petitions for certiorari is an adequate state procedural ground.  That is, the procedural rule applied by the supreme court is applied evenhandedly to all similar petitions in the vast majority of cases.  <u>Serna v. Board of County Commissioners</u>, <u>supra</u>; <u>Gulf Oil Corp. v. Rota-cone Field Operating Co.</u>, <u>supra</u>; <u>See</u> <u>Dugger v. Adams</u>, 489 U.S. 401, n.6, 109 S.Ct. 1211, 103 L.Ed.2d 435 (1989) (United States Supreme Court states that in the vast majority of cases the Florida Supreme Court faithfully applied its rule that claims not raised on direct appeal cannot be raised on postconviction review); <u>Andrews v. Deland</u>, 943 F.2d at 1190.

Petitioner did not "fairly present" the New Mexico Supreme Court with an opportunity to rule on the issues in his habeas corpus petition.  Fair presentation implies timely presentation so that a state court need not disregard or violate its procedural rules to entertain the issues.  As the United States Supreme Court stated in <u>Coleman v. Thompson</u>, "a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance."  111 S.Ct. at 1555.

In order to excuse such procedural default, Petitioner must establish "good cause" and "prejudice" in connection with that default.  In <u>Coleman v. Thompson</u>, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), the guidelines were set out in this manner:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. 111 S.Ct. at 2565, 115 L.Ed.2d at 646.

Petitioner has not shown "cause and prejudice" to bring himself within that exception to procedural default. Such a cause must be external to the petitioner and not attributable to him. Rodriquez v. Maynard, 948 F.2d 684, 687 (10th Cir. 1991). Petitioner contends that because he placed the petition in the prison mailbox on March 19, 1997, and it should have arrived at the New Mexico Supreme Court by March 24, 1997, that cause exists to excuse his procedural default. Apparently Petitioner gambled that the mail would arrive at the New Mexico Supreme Court in time for his petition to be filed within the time prescribed by the rule. The filing requirements of Rule 12-501 are mandatory and explicitly state that no extra time is permitted for mailing. Rule 12-307 also explicitly states that "[f]iling by mail is not complete until actual receipt."

Even if his late filing were inadvertent, the United States Supreme Court has noted that, "the costs associated with an ignorant or inadvertent procedural default are no less than where the failure to raise a claim is a deliberate strategy: it deprives the state courts of the opportunity to review trial errors." Coleman v. Thompson, 111 S.Ct. at 2566.

Petitioner had the means and opportunity to acquaint himself with the appellate rules and procedures and there is no cause to excuse his default. On March 5, 1997, access to the prison law library was resumed for those inmates in the main facility. Petitioner could have sent his petition any time after that date. The petition filed in this case did not require any special legal expertise since the material facts, the basis for granting certiorari, and the argument all referred to: "attached on supplemental grounds attachment." (Answer, Ex. P Attachment). All Petitioner had to do was fill out and mail the form.

Because petitioner has not shown cause for his procedural default, this Court does not need to address the issue of prejudice. Steele v. Young, 11 F.3d 1518, 1522, n.7 (10th Cir.



1993). The procedural default in this case is an adequate and independent state ground for denial of Petitioner's constitutional claims. As such, a federal court should respect this ground in the interests of comity and federalism and deny the petition for writ of habeas corpus. See Church v. Sullivan, 942 F.2d 1501 (10th Cir. 1991).

POINT II

PETITIONER RECEIVED THE EFFECTIVE<br/>ASSISTANCE OF COUNSEL.

The standard for judging whether a defendant received the effective assistance of counsel was set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984). The standard for judging a claim of ineffectiveness is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." 466 U.S. at 686. There are two components to the claim. "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense." 466 U.S. at 687.

The proper standard for an attorney's performance is that of "reasonably effective assistance". Id. See also Trapnell v. United States, 725 F.2d 149, 151-152 (2nd Cir. 1983). When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Strickland v. Washington, supra, 466 U.S. at 687-688.

A court in reviewing counsel's performance "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id., at 689.

13

These standards apply to habeas corpus proceedings. Id. at 697. Therefore, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. Id., at 689. A defendant must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. Id. at 689.

The Tenth Circuit Court of Appeals in Miles v. Dorsey, 61 F.3d 1459, 1478 (10th Cir. 1995), cert. denied, 516 U.S. 1062, 116 S.Ct. 743, 133 L.Ed.2d 692 (1996) stated:

> Simply put, an ineffectiveness claims alleges counsel committed disciplinable professional misconduct. In the absence of facts that indicate "counsel's representation fell below an objective standard of reasonableness," counsel should not use the claim to scrutinize every criminal representation and conviction that does not terminate in an acquittal . . . . Because an allegation of ineffectiveness broadcasts a professionally damaging message, counsel should consider whether the facts truly merit an ineffectiveness claim, or if they merely demonstrate the court's maxim that "[t]here are countless ways to provide effective assistance in any given case." (quoting Strickland, 466 U.S. at 688, 104 S.Ct. at 2064).

In the present case, defense counsel did not commit disciplinable professional misconduct.

In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court stated that courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." 104 S.Ct. at 2065-66, 80 L.Ed.2d at 694-95. In order for a petitioner with an ineffective assistance claim to prevail over his former counsel's assertion of strategy, he must "overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." Id.

In his brief, Petitioner contended that counsel was ineffective at trial because he limited his defense to cross-examination of the former co-defendant cooperating witness, alleged actual

murderer instead of exploring a polygraph with Defendant.  He also contends that counsel was ineffective for advising his client not to testify once having excluded the possibility of the Defendant being able to present a polygraph regarding his actual innocence.  Petitioner's claim is not credible since Petitioner stated under oath at the evidentiary hearing that he had never told anyone before what had occurred regarding the murder.  (Tr. 4/6/99, 38-40).  Petitioner stated that he never told his lawyer what happened.  If this testimony is to be believed then Petitioner's claim of ineffective assistance of counsel has no merit since there would have been no reason to explore a polygraph if one's client does not tell the lawyer what happened.

Petitioner merely presents conclusory allegations with no support for his claim.  There is no evidence to indicate that Petitioner could pass a polygraph test which would be admissible under New Mexico law.  Rule 11-707 NMRA 1999 sets forth the prerequisites for admission of polygraph evidence in New Mexico courts.  Petitioner's self-serving statements that he passed a polygraph test are not sufficient to raise the issue that his attorney was ineffective for failing to explore a polygraph examination since by Petitioner's own testimony he said that he never told his lawyer what happened.  Petitioner's failure to present this Court with any results of a polygraph test indicate that he has no support for his claim that counsel was ineffective except his self-serving statements.  In order to even assert this claim, Petitioner at a bare minimum needed to introduce the results of a polygraph examination indicating that he had passed the test.

Moreover, whether Petitioner committed the actual murder is immaterial.  As the New Mexico Supreme Court noted in its Decision:

> Santillanes was convicted of felony murder.  Under the theory of felony murder, it is immaterial which of the perpetrators of the underlying felony commits the actual murder.  It is enough that the perpetrators commit an inherently dangerous felony or the felony is committed under circumstances that



are inherently dangerous.  (citation omitted).  In the instant case the underlying felony was attempted armed robbery.

Santillanes does not contend that he was not present and/or involved in the attempted armed robbery.  Under the felony murder theory, it is immaterial whether he or Sedillo was the actual killer.  Santillanes could still be convicted of first degree felony murder. . . .

Answer, Ex. F, page 5.

Trial counsel had strategic reasons for advising his client not to testify in this case.  In his opinion, the co-defendant James Sedillo was not a credible witness.  (Tr. 4/6/99, 46-47).  Trial counsel stated that the issue of Petitioner's prior record would have been a strong factor in decision whether or not to testify and trial counsel believed this prior record would end up hurting Petitioner if he did testify.  (Tr. 4/6/99, 49-51).  Petitioner's prior record was quite extensive.  (See Rap Sheet admitted into evidence at the 4/6/99 evidentiary hearing.).  Trial counsel testified that he did not recall the question of a polygraph coming up.  (Tr. 4/6/99, 45, 47).  Trial counsel stated that he did not think the question of a polygraph would have been addressed without knowing Petitioner's story, nor did he know how he could have advised Petitioner on whether or not to testify without knowing his story.  (Tr. 4/6/99, 48). Petitioner testified at the evidentiary hearing that he had never told anyone before what had occurred regarding the murder.  (Tr. 4/6/99, 10, 38-41).  When cross-examined, Petitioner testified that he had never told his story to his lawyer.  (Tr. 4/6/99, 38-41).

In examining counsel's performance, courts should not use 20-20 hindsight.  As the Eighth Circuit Court of Appeals stated in <u>Blackmon v. White</u>, 825 F.2d 1263 (8th Cir. 1987):

[T]he courts must resist the temptation to second-guess a lawyer's trial strategy; a lawyer makes choices based on the law as it appears at the time, the facts as disclosed in the proceedings to that point, and his best judgment as to the attitudes and sympathies of judge and jury.  The fact that the choice made later proves to have been unsound does not require a finding of ineffectiveness.  The petitioner

bears the burden of successfully challenging particular acts and omissions of his attorney which were not the result of reasonable professional judgment; it is not enough to complain after the fact that he lost, when in fact the strategy at trial may have been reasonable in the face of an unfavorable case.

Blackmon, 825 F.2d at 1265.

Finally, Petitioner fails to show prejudice resulting from counsel's allegedly deficient action. Petitioner must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Petitioner cannot show that counsel's failure to explore a polygraph exam prejudiced him. Petitioner testified that he never told his attorney what occurred regarding the murder. (Tr. 4/6/99, 38-41). There would have been no reason to explore the taking of a polygraph examination if Petitioner never told trial counsel what had occurred regarding the murder. In light of Petitioner's testimony that he never told his attorney what occurred regarding the murder, it would be ineffective assistance of counsel to advise a client to testify if the attorney had no idea of what his client's testimony would be. Moreover, Petitioner has never provided this Court with any evidence to show that he passed a polygraph examination. Petitioner has failed to satisfy either requirement of Strickland v. Washington, supra. He has failed to show that his counsel's performance was deficient and he has failed to show that he was prejudiced in any way by his counsel's alleged deficiencies. Petitioner received the effective assistance of counsel.

Petitioner's brief also argues that trial counsel's ineffectiveness was not harmless error. (Petitioner's Brief at pages 17-18). Constitutional errors are of two types: structural error or trial error. "A structural error is a defect in the trial mechanism itself, affecting the entire trial process, and is *per se* prejudicial. Trial error occurs during the presentation of the case to the jury, and may be quantitatively assessed in the context of all other evidence." Yohn v. Love, 76



F.3d 508, 522 (3rd Cir. 1996).  The standard for harmless error on collateral attack in a habeas corpus case is whether an error had substantial and injurious effect or influence in determining the jury's verdict.  Tuttle v. Utah, 57 F.3d 879, 884 (10th Cir. 1995) (citing to Brecht v. Abrahamson, 507 U.S. 619, 623, 113 S.Ct. 1710, 1714, 123 L.Ed.2d 353 (1993)); see also California v. Roy, 519 U.S. 2, 117 S.Ct. 337, 136 L.Ed.2d 266 (1996); O'Neal v. McAninch, 513 U.S. 432, 115 S.Ct. 992, 994, 130 L.Ed.2d 947 (1995).  A harmless error analysis is inappropriate for an ineffective assistance of counsel claim because it is a structural error.  If counsel's performance is deficient and a petitioner shows prejudice, he would be showing that he had been harmed.  As previously discussed, there was no ineffective assistance of counsel in this case and therefore no error.

There also is no merit to Petitioner's claim of actual innocence.  The only evidence presented to the Court was Petitioner's self-serving statements which were not believable. Petitioner failed to present any evidence in support of his claim of actual innocence.  At the evidentiary hearing, there was testimony from one of the prosecutors in the case that there were plea negotiations in this case.  Petitioner's counsel offered to plead his client guilty to first degree murder in exchange for an agreement that the time on the charge would run concurrent with time he was facing in federal court.  However, the state refused to consider the plea offer.  (Tr. 4/6/99, 59-60).  It is difficult to believe that any person who is actually innocent would ever agree to plead guilty to a crime which he did not commit.



POINT III

## PETITIONER HAS PROCEDURALLY DEFAULTED ANY CLAIM
## REGARDING WAIVER OF HIS RIGHT TO TESTIFY.

Petitioner's final argument is that "Defendant's waiver of his right not to testify is a fundamental constitutional right which must be established by a knowing, intelligent waiver, freely and voluntarily made."  This issue is not appropriately before this Court.  It was never raised in the petition.  The issue was also not raised on direct appeal or in the state habeas corpus proceeding.

One of the requirements for collateral review is that a Petitioner exhaust his state court remedies by presenting the claims to the state courts.  This issue was never raised on appeal and therefore, it is not appropriate for this Court to consider it.  Federal courts generally do not review issues that have been defaulted in state court on an independent and adequate state procedural ground, unless the default is excused through a showing of cause and actual prejudice or a fundamental miscarriage of justice.  <u>See</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991).  In the present case, Petitioner procedurally defaulted this claim because of his failure to present it to the New Mexico courts on direct appeal.

Petitioner's failure to raise the issue regarding the waiver of his right to testify was never raised in the New Mexico court.  This failure to raise this claim on appeal or an collateral review constitutes a procedural default of the claim.  Under New Mexico law, the failure to raise issues in a direct criminal appeal results in waiver of those claims for purposes of state post-conviction relief.  <u>Jackson v. Shanks</u>, 143 F.3d 1313, 1318 (10th Cir. 1998) (citing to <u>State v. Gillihan</u>, 86 N.M. 439, 524 P.2d 1335, 1336 (1974)).  Petitioner's failure to raise this claim constitutes an



independent, adequate state procedural ground unless Petitioner can demonstrate cause and prejudice for his failure to raise these claims or a fundamental miscarriage of justice. <u>Id.</u> Petitioner has not shown cause or prejudice from his failure to raise this claim. Because of Petitioner's procedural default of this claim, this Court should not address this issue.

Moreover, there is no merit to his claim. There has never been a requirement that a trial court question a defendant regarding his right to testify. Under the provisions of AEDPA, in order for a court to grant a petition for writ of habeas corpus on issues considered by the state courts, the court must find that adjudication of the claim must result in a decision that is contrary to clearly, established Federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d). As Petitoner acknowledges in his brief, he requests this Court to "set a new rule that whenever a defendant decides not to testify or to testify, that the court conduct a separate and distinct inquiry to insure that the defendant is making a knowing and intelligent waiver or exercise of this fundamental Constitutional right." (Petitioner's brief at pages 5-6, 27). It would make no sense to force a defendant to answer questions from the court when he wanted to exercise his right to remain silent. Petitioner's rap sheet indicated that he had extensive experience with the criminal justice system. Given this experience, he had to have been aware that he could testify on his own behalf and chose not to do so because he could be questioned on his prior record. If Petitioner never told his attorney what happened the night of the murder as he testified to at the evidentiary hearing, it would have been irresponsible for trial counsel to advise him to testify not knowing what Petitioner would testify about regarding the events of the murder.

## CONCLUSION

The petition for writ of habeas corpus should be dismissed with prejudice due to petitioner's procedural default of his claims in state court. If this Court determines that Petitioner has not procedurally defaulted his claims and considers the claims on the merits, the petition should be denied and the case dismissed with prejudice because Petitioner's claims have no merit.

Respectfully submitted,

PATRICIA A. MADRID
Attorney General

Patricia Gandert
Assistant Attorney General

Attorneys for Respondent
Post Office Drawer 1508
Santa Fe, New Mexico 87504
(505) 827-6938

## CERTIFICATE OF SERVICE

I hereby certify that a copy of
the foregoing was served by mailing
a copy to Petitioner's counsel:

      Roger Finzel
      Assistant Federal Public Defender
      First State Bank Building—Suite 501
      111 Lomas Boulevard NW
      Albuquerque, NM 87102

on this 9th day of September, 1999.

Assistant Attorney General