IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANDREW SANTILLANES,

    Petitioner,

vs.                                             Civ. No. 97-549 LH/DJS

TIM LeMASTER, Warden,

    Respondent.

### PETITIONER'S OBJECTIONS TO THE MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**COMES NOW** counsel for the Petitioner, Assistant Federal Public Defender Roger A. Finzel, and, pursuant to 28 U.S.C. § 636(b)(1), hereby files these written objections to the Proposed Findings and Recommended Disposition of the Honorable Magistrate Judge Lorenzo F. Garcia of the United States District Court for the District of New Mexico.

1.     The objections were originally due on March 7, 2000, but counsel requested and was granted an extension of time until April 7, 2000, for the filing of these objections to the Magistrate Judge's Proposed Findings.

2.     Respondent reasserts and incorporates herein by reference all of the arguments, legal authorities and evidence established through the evidentiary hearings and contained in petitioner's Memorandum Brief in support of his petition which was filed on July 26, 1999, set forth in the petitioner's Reply Brief filed on October 18, 1999. In addition to those original arguments, counsel supplements and specifically makes the following additional

objections in this memorandum. Issues not mentioned in this memorandum have not been abandoned and are incorporated herein by reference.

3. Petitioner objects to the court's proposed finding in ¶ 6 that the record establishes that "Santillanes did indeed fail to file for certiorari in the time allotted by law." The evidence submitted at the evidentiary hearings established that Mr. Santillanes placed his petition in a mailbox at the penitentiary of the State of New Mexico in sufficient time for it to have been received by the New Mexico Supreme Court in a timely fashion. The evidence is uncontroverted, both from the petitioner and by affidavit from Mr. Chappell that the letter was placed in the prison mailbox on March 19, 1997. The record also establishes that it was not received by the United States Post Office until March 28, 1997. The petition was due to be filed on or before March 24, 1997. Under New Mexico law, a filing is not effective until it is received by the New Mexico Supreme Court.

4. Petitioner specifically objects to the court's finding in ¶ 6 because it does not acknowledge that the evidence is uncontroverted that the letter was placed in the mailbox on March 19, 1997. Furthermore, this court's proposed finding or conclusion of law is unsupported by any other evidence. No evidence was presented that the letter was not placed in the mailbox on March 19, 1997. It is not a fact and cannot be a factual conclusion because it is unsupported by the testimony and other evidence presented at the evidentiary hearing.

5. To the extent that this court reaches this conclusion as a factual matter based on its analysis of the Mailbox Rule, the finding is erroneous and neither supported by fact nor

law.

6. Petitioner further objects that in reaching its conclusions of procedural default, this court makes no mention of the case cited by petitioner in his Memorandum Brief at page 8 of *United States v. Gray*, 1999 WL 436403, No. 98-6043, decided on June 29, 1999, by the Tenth Circuit Court of Appeals. Petitioner submits that the *Gray* case trumps the cases cited by this court and supports his position that there has been no procedural default. Coincidentally, the respondent in their Answer Brief also failed to address the decision of *United States v. Gray*. Counsel for petitioner reasserts that all of the authority advanced in the original memorandum of law including *United States v. Gray* is dispositive of the issue in favor of this petitioner.

7. The petitioner objects to the proposed findings and conclusions in the court's ¶¶ 14-17. While they repeat the New Mexico Supreme Court's analysis of the prosecutorial misconduct issue, this proposed findings and recommended disposition ignores the fact that the New Mexico Supreme Court did not afford this petitioner an opportunity for an evidentiary hearing on that issue.

8. This United States Magistrate Judge notes in ¶ 17 that "petitioner's . . . claim of ineffective assistance of counsel would be considered on the merits if he could establish circumstances excusing his procedural default of this claim. To excuse his default he has raised issues of a fundamental miscarriage of justice as well as cause and prejudice." Petitioner reasserts his arguments contrary to this court's findings and proposed disposition

on this matter.

9. Petitioner specifically objects to the court's characterization of the petitioner's testimony as his "story." In ¶ 20, the court said that the petitioner would have told the following "story" to the jury. The implication behind telling the jury the following "story" is that it is a fabrication. There is nothing in the record to support a conclusion that Mr. Santillanes' testimony was a made up "story." This prejudice to the petitioner's testimony is clearly evidenced in ¶ 30. This court refers to Mr. Santillanes' testimony as "Santillanes' story" while it refers to the informant/former co-defendant James Sedillo as having "testified" to various "information."

10. It should be uncontroverted that Mr. James Sedillo had more reason to fabricate in order to save his own skin in the telling of his "story." The untrustworthiness and inherent unbelievability of a co-defendant's self serving statements to implicate his co-defendants and exonerate himself was discussed in the case of *Lilly v. Virginia*, 119 S.Ct. 1887 (1999). Unlike this case, in the *Lilly* case the self-serving testimony of the co-defendant was admitted after the co-defendant took the Fifth Amendment privilege against self incrimination. In the *Lilly* case the trial court admitted the self-serving statements made by the co-defendant to the police. *Lilly* was reversed because the hearsay admission of the co-defendant's statements violated the confrontation clause guaranteed by the United States Constitution.

11. Although in this situation the co-defendant, Mr. Sedillo, did testify at trial, his testimony was not put to the adversarial crucible that the Constitution requires because of the

4

ineffective assistance of trial counsel. Petitioner's confrontation clause right to confront, cross examine and competently attack the testimony of the witness against him was denied this petitioner because his lawyer was ineffective. He was ineffective both as a matter of fact and as a matter of law based on the evidence presented and upon the legal arguments. Counsel submits that the United States Magistrate Judge's reliance on Mr. Sedillo's self-serving testimony is misplaced. Petitioner specifically objects to the court's conclusion in ¶ 36 that Santillanes' "story" is not objectively more believable than Sedillo's version of events or his testimony. Sedillo was not subjected to the crucible of effective cross examination because Santillanes' trial counsel was unaware of the true nature of the defense since he had never discussed it with Mr. Santillanes.

12. Petitioner objects to the court's conclusion that the conflicting testimony would have not been helpful to the defendant in a felony murder case because no matter who does the stabbing, the other party shared equally in the misconduct of the other. Felony murder is a different offense than accessory after the fact.

13. Petitioner's objections are in fact supported by Santillanes' trial attorney's belief that the state had a weak case and that their star witness, Sedillo, was not a credible witness. Unfortunately, the attorney failed to discuss with his client his defense so client could make an informed judgement whether or not he should testify. Without that knowledge there can be no effective confrontation by his trial attorney.

14. Inexplicably, the court's proposed findings and recommended disposition

seems to be contradictory within itself. In ¶ 46, this Magistrate Judge finds that Santillanes mailed his petition on March 19, 1997, but it did not reach the Supreme Court until April 1, 1997. It also finds that the delay was not attributable to Santillanes. This finding of fact appears contradictory to this court's conclusion contained in ¶ 6 that "the record establishes that Santillanes did indeed fail to file for certiorari within the time allotted by New Mexico law." Counsel submits that if the evidence establishes that the petitioner mailed his petition in a timely fashion and the reason for its delay to the Supreme Court is unknown then the court should conclude as a matter of law that the petition was filed within the time allotted by New Mexico law.

15. Petitioner objects to the court's conclusion in ¶ 48 that Santillanes has failed to show "actual prejudice resulting from the alleged errors." Furthermore, petitioner objects to the entire analysis presented in ¶¶ 49-55.

16. As a general objection, petitioner submits that the analysis contained in ¶¶ 49-55 appear to be based upon the self-serving, and inherently suspect, testimony of Sedillo at trial. On the other hand, Santillanes testified at the evidentiary hearing that he was told by his privately retained polygraph examiner that he had recently passed a polygraph examination. The court in ¶ 52 erroneously concludes that there is no evidence that the petitioner would have passed a polygraph at the time of trial if it had been administered. The evidence is to the contrary, unless this court is completely disregarding the testimony of the petitioner herein. The only evidence presented at the evidentiary hearing was that the

petitioner had recently taken a polygraph and had passed it. Counsel does not submit that this is dispositive that the petitioner was truthful. Rather, it does establish by a preponderance of the evidence that there is more evidence that he would have passed a polygraph test had his lawyer undertaken to administer one at the time of the original trial, than there is evidence that he would not have passed it. Under these circumstances, the court's conclusion is without support.

17. The court concludes that the petitioner's trial attorney was not ineffective in ¶ 55 before it undertakes the analysis in ¶¶ 56-69 regarding his trial attorney's failure to call Santillanes to testify at trial. It appears that the conclusion in ¶ 55 represents the cart before the horse.

18. Petitioner submits that the evidentiary hearing and legal arguments establish that his counsel did prevent him from testifying at his trial. This court's analysis actually supports granting of this petition. *See*, ¶ 59 in *United States v. Hershburger*, 940 F.2d 671 (1999), WL 136337, 10th Cir., July 24, 1991. Petitioner submits that the tests set forth for establishing that he was prevented from testifying as enunciated by this Magistrate Judge in ¶ 60 were met by the evidence presented by Santillanes at the evidentiary hearings.

19. Petitioner submits that the court has misconstrued the nature of Mr. Santillanes' testimony. On the one hand, the court subsumes a high degree of sophistication with court procedure and law because the petitioner has prior convictions. When petitioner was asked at the evidentiary hearing what he understood about his right to testify he said, "I didn't really

understand that at the time. I thought I really didn't have to." ¶ 63. Apparently this court understands this answer applies only to his understanding of whether or not he should testify. The question that Mr. Santillanes was asked at the evidentiary hearing was whether he understood that he could testify regardless of his attorney's advice. Mr. Santillanes answered that question in two ways. He said both, "I didn't really understand that at the time" ... and "I thought I really didn't have to." ¶ 63. Counsel submits that the court should understand this to be two separate and distinct reasons for not testifying. One, that his attorney told him that he didn't have to, and, more fundamentally, that he did not understand that he could testify regardless of his attorney's advice. Instead, this court has assumed a level of sophistication in the compound answer of the defendant that is not consistent with his background, training, education or the facts presented at the evidentiary hearing.

20.   This court's analysis in ¶ 64 supports the two part answer advanced by petitioner herein. The court acknowledges that Mr. Santillanes repeatedly told his attorney that he wanted to take the stand. What this court finds to be a contradiction in Santillanes' testimony in the last sentence in ¶ 64 is actually a confirmation of the defendant's desire to testify. It confirms that he did not know that he could testify in spite of what his attorney thought was good advice. It is not contradictory for the defendant to say that he told his attorney on the last day of trial that he wanted to take the stand if this court understands that the defendant wanted to testify all along. If petitioner did not know he could testify regardless of his attorney's advice then it is not contradictory that the defendant asked if he

could testify on the last day of trial. If petitioner did not understand that he could override the advice of his attorney and testify regardless of the attorney's advice, then his question to his attorney supports his claim. The testimony of Mr. Santillanes is therefore consistent with his testimony that he did not understand that he could testify regardless of his attorney's advice.

21.  Petitioner objects to the court's conclusion in ¶ 66 that there is no indication that Santillanes insisted on testifying. On the contrary; the fact that Santillanes asked the attorney near the end of trial if he could testify or if it was too late, as described in ¶ 64, supports petitioner's claim. What is significant is that the petitioner testified that he told his attorney that he wanted to testify; therefore, the court's conclusion in ¶ 66 that there is no indication that Santillanes insisted that he be allowed to testify is contradictory to the testimony and the evidence presented at the hearings.

22.  This court's reliance on *Von Roder* in ¶ 67 is misplaced. There is no suggestion that had defense counsel listened to his client, learned of his defense and put petitioner on the stand that his defense counsel would have had to withdraw from the case. In *Von Roder*, the defense counsel did not believe the testimony that that defendant was going to make. In the present case, the defense attorney did not know what the petitioner would testify to since he had not informed himself of those facts. He had not interviewed the petitioner and therefore could not effectively advise him on whether or not to testify let alone rebuff the defendant's effort to testify.

23.     Petitioner objects to the court's conclusion that this petitioner's dissatisfaction arises only in hind sight. The evidence does not support that his dissatisfaction arises in hind sight. The evidence supports that petitioner was not provided effective assistance of counsel. Petitioner is dissatisfied with the ineffective assistance of counsel, not through hindsight but on the basis of the facts that have been established through the evidentiary hearing and in the arguments made previously and in these objections.

24.     In addition to other arguments previously advanced, petitioner objects to ¶ 73 because the conclusions in ¶ 73 are fundamentally at odds with petitioner's claims. Petitioner in part claims that his lawyer was ineffective because he failed to properly investigate, prepare and know what the petitioner's testimony would be before he made an uninformed decision not to consider the use of a polygrapher. If a lawyer does not know what his client would testify to then he cannot make an intelligent and informed decision on whether or not to consider a polygrapher.

25.     Petitioner objects to the conclusion in ¶ 74 when this court concludes that petitioner's trial counsel "had good reasons" for not ordering a polygraph. Presumably, this court assumes it was a good reason not to order a polygraph because petitioner's trial counsel did not think it would be a good idea for petitioner to testify at trial because of his prior conviction. Petitioner submits that this is an incorrect analysis under the facts of this case. The proper procedure would have been for the trial attorney to first determine what the defendant's testimony would have been had he testified. Petitioner's trial attorney did not

10

do this. Next, the petitioner's attorney would have then considered what questions were amenable to a polygraph examination. This also never entered his trial attorney's mind. Then, after determining the appropriate questions after learning what the defendant would actually testify to, the attorney could then have arranged a polygraph examination on the important and relevant questions. If the test results were inconclusive or unfavorable to the defendant, then the attorney would not have to use the polygraph results. Under New Mexico law, the attorney would not disclose the results to counsel for the government. On the other hand, if the test results had been favorable to the petitioner, then the attorney and the client could have had an intelligent and informed discussion balancing the favorable polygraph results against the unfavorable inferences to be drawn from the defendant's prior criminal conviction. That would have been effective representation. However, trial counsel's performance in this case when he failed to discuss the defense with his client was and remains unreasonable. The failure to explore this easily ascertainable avenue of defense and to procure potentially positive, exculpatory proof of innocence bares no relationship to an effective or reasonable defense strategy. *See Hoxsie v. Kerby,* 108 F.3d 1239, 1246 (10th Cir. 1997). Considering that counsel did not know what the defendant's testimony would be, then it was completely unreasonable for his trial attorney not to have explored a polygraph examination in this case.

WHEREFORE, for these additional reasons and adopting and incorporating all previously advanced arguments, counsel objects to this court's proposed findings and

11

recommended disposition. Counsel requests that the petitioner's petition be granted.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
111 Lomas, NW, Suite 501
Albuquerque, NM 87102
(505) 346-2489

By _____
Roger A. Finzel
Assistant Federal Public Defender
Albuquerque Office

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the following pleading was mailed to Patricia Gandert, Assistant Attorney General on this 7th day of April, 2000.

By _____
Roger A. Finzel

12